AGRUBA TRADING CO. *v.* UNITED STATES

No. 5957.—Invoices dated Barcelona, Spain, October 25, 1937, etc.
Entered at New York, N. Y., December 3, 1937, etc.
Entry No. 97707, etc.

(Decided November 24, 1943)

*William Whynman* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

WALKER, Judge: These are appeals for reappraisement from findings of value made by the United States appraiser at the port of New York on certain drawn gut, imported from Spain in 1937. Prior to taking up the merits of the case, I find pending and undisposed of a motion made by Government counsel—

* * * to dismiss the importer's appeal for reappraisement upon the ground, first, that the exporter has testified that the invoice does not contain a statement of the currency in which this merchandise was bought and sold, and hence it is not a compliance with the provisions of section 481 of the Tariff Act of 1930; * * *.

The particular provision of section 481 referred to in the foregoing motion appears to be the following:

SEC. 481. INVOICE—CONTENTS.

(a) *In General.*—All invoices of merchandise to be imported into the United States shall set forth—

\*          \*          \*          \*          \*          \*          \*

(5) The purchase price of each item in the currency of the purchase, if the merchandise is shipped in pursuance of a purchase or an agreement to purchase;

\*          \*          \*          \*          \*          \*          \*

The exporter of the merchandise involved was called to the stand as a witness on behalf of the plaintiff, and testified, with respect to the invoice in question (which is apparently that covered by reappraisement 131564–A), as follows:

Q. Will you please explain why the invoice was made out in American dollars when your currency of sale was in pesetas?

A. When I had ready for shipment, I made the invoice, and I go to the American consul, and I ask for the consular invoice, which I understand is the blue one. He told me that has to be in dollars, so I say, "What I have to do?" I asked what kind of rate, so he told me at the rate of 17 pesetas for one dollar, so I go back and make this invoice out. I converted the pesetas into dollars at the rate of 17, what the consul told me, and I go back and give him the consular invoice and showed him the bills, and he told me to come an hour later, and I have to pay $2.50, and I shipped it out to the United States. That is why I get here dollars converted from the pesetas.

Q. So that the price in pesetas that you sold to your brother can be determined by multiplying the American dollars by 17; is that right?—A. Yes, you have to get the exact price what is the pesetas if you take the dollar at 17 pesetas per dollar.

Q. You say you were told to do that by the American consul, to change your pesetas on the invoice into dollars?

A. Yes.

(R. pp. 14–15)

Section 481, *supra*, relates to the information which must be contained in invoices of merchandise to be imported into the United States. Section 484 of the same act requires that on entry a certified invoice must be produced, and section 485 provides that—

\* \* \*. Every consignee making an entry under the provisions of section 484 of this Act shall make and file therewith, in a form to be prescribed by the Secretary of the Treasury, a declaration under oath, stating—

\*          \*          \*          \*          \*          \*          \*

(2) That the prices set forth in the invoice are true, in the case of merchandise purchased or agreed to be purchased; \* \* \*;

(3) That all other statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct; and

(4) That he will produce at once to the collector any invoice, paper, letter, document, or information received showing that any such prices or statements are not true or correct.

It is to be noted that the motion to dismiss is not based upon failure of compliance with the provisions of sections 484 and/or 485, *supra*, which appear to set forth certain requirements which the *consignee or his agent* must meet in the entry of merchandise, but

rather upon section 481, which has to do with matters generally not under the direct control of the consignee or his agent, viz, invoice requirements.

Section 501 of the Tariff Act of 1930 provides that—

* * *. No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this Act relating to the *entry* and *appraisement* of such merchandise. * * *. [Italics added.]

So far as appears from the record, the consignee complied with all the provisions above referred to; at least my attention has not been directed by counsel for the defendant to any failure in that regard on the part of the *consignee or his agent*. Whatever failure there was, was on the part of the exporter.

With reference to the obligations of the consignee or his agent in connection with the entry and appraisement of merchandise, I observe that not only is compliance with the provisions of the act in that regard made a condition precedent to the right of appeal for reappraisement under section 501, *supra*, but that provision is made in section 591 and 592 of the tariff act, as amended by the Anti-Smuggling Act of 1935 (49 stat. 517; 19 U. S. C. 1940 ed. §§ 1591 and 1592) for penalties against the person and the goods where attempt is made to pass merchandise under fraudulent invoices.

Returning, however, to a consideration of the precise motion before me, based upon failure of compliance with the invoicing requirements of section 481, I find that numerous cases have arisen in this court in which motions have been made to dismiss appeals for reappraisement for failure of compliance with the invoicing requirements specified in section 481, *supra*, and its predecessors, and such motions were in each case denied by this court, all of such decisions being based upon the decision of this court in the case of *Dwyer & Wedemann* v. *United States*, T. D. 34809, reported in 27 Treas. Dec. 261. In that case motion was made to dismiss a reappraisement appeal filed under the provisions of the Tariff Act of 1913 on the ground that the invoice did not contain—

* * * a true and full statement of the time when, the place where, the person from whom the same (the merchandise involved) was purchased or agreed to be purchased.

as required by paragraph D of section 3 of the said act, a predecessor of section 481, *supra*.

In passing on the motion the court said:

Paragraph F of said section [3] provides:

That whenever merchandise imported into the United States is entered by invoice, a declaration upon a form to be prescribed by the Secretary of the Treasury, according to the nature of the case, shall be filed with the collector of the port at the time of entry * * *.

Paragraph M of said section grants to every importer the right of appeal to reappraisement whenever he may deem an appraisement too high, provided he has complied with the law covering entry.

In this case the importer filed an invoice, as required by paragraph F, and made his entry thereon, which the collector accepted. Subsequently the appraiser, to whom the papers were forwarded, appraised the merchandise, making the advance here complained of.

If the collector did not consider the invoice to be in conformity with paragraphs C and D of said section 3, tariff act of 1913, we think that he should have refused entry thereon and required the importers to give bond to produce a corrected invoice; but having failed so to do, and the invoice having been accepted as sufficient for purposes of entry and appraisement, we do not think the importer is thereafter to be denied his statutory right of appeal to reappraisement on the ground that he has failed to comply "with the requirements of law with respect to the entry and appraisement of merchandise."

It is impossible for us to conceive under what construction of the law it can be claimed that, after an importer has entered his goods and the same have been duly appraised by the appraiser, there is no course left open to the importer to take an appeal from said appraisement. If this doctrine should be declared sound, then the appraiser might, with the same propriety that he advanced the merchandise in this case 5 per cent in value, arbitrarily advance the value of any merchandise to the point of seizure, without any recourse or right of appeal being available to importers.

*Paragraph D contains no provision penalizing a failure on the part of importers to comply literally with its terms. It certainly does not provide that an importer who fails to show on his invoice the details required should be denied the right of appeal from an appraisement of his merchandise.*

Failure to fully set forth on the invoice and entry the data required by law does not necessarily call for a dismissal of these proceedings, especially in view of the fact that both the collector and appraiser have duly and officially passed upon the merchandise covered thereby.

This appeal having come on regularly to be heard and this board having acquired jurisdiction of the subject matter thereof for the sole purpose of ascertaining and determining the "actual market value and wholesale price of the merchandise at the time of exportation to the United States in the principal markets of the country whence the same has been exported," we are decidedly of opinion that to deny an importer his statutory right of appeal merely because his invoice does not contain the data required by law, although his entry papers are in proper legal form, would be an act in excess of the legal authority of this board and without warrant of law.

The motion to dismiss the appeal is overruled. [Italics added.]

It is true that in the case of *United States* v. *Alatary Mica Co.*, 17 C. C. P. A. 284, T. D. 43692, it was held that the provisions of subdivision (b) of section 481 of the Tariff Act of 1922, reading as follows:

If the merchandise is shipped to a person in the United States by a person other than the manufacturer, otherwise than by purchase, such person shall state on the invoice the time when, the place where, the person from whom such merchandise was purchased, and the price paid therefor in the currency of the purchase, stating whether gold, silver, or paper.

were mandatory, and if not complied with the importer's appeal to reappraisement was invalid. A full reading of that case, including the decision on remand, reported in Reap. Dec. 1824, and the second decision by the Court of Customs and Patent Appeals, reported in 19 C. C. P. A. 30, T. D. 44871, reveals that the conclusion with respect to section 481 was not necessary to the ultimate decision in the matter, and so must be regarded as *dicta*, and not controlling.

The recently decided cases of *Florea & Co., Inc.* v. *United States*, Reap. Dec. 5907, and *same* v. *same*, Reap. Dec. 5908, now on appeal, involved, in addition to section 481, sections 482, 484, and 485, and

hence those cases are distinguishable from that at bar, in which, as hereinbefore stated, the motion to dismiss is based only upon failure of compliance with section 481.

Following the decision in the *Dwyer & Wedemann* case, *supra*, which I feel is well-reasoned and sound, I hold that the failure of the invoice to comply with the provisions of section 481, *supra*, is not a ground for denying the importer his right of appeal for reappraisement, and the motion to dismiss the appeals is accordingly denied.

Turning, therefore, to a consideration of the merits of the case, it appears to be undisputed that the merchandise was appraised on the basis of export value of such or similar gut. Plaintiff's claim is that the correct basis of value for the merchandise is the foreign value, as defined in section 402 (c) of the Tariff Act of 1930 prior to the passage of the Customs Administrative Act of 1938, and that the export value was no higher.

In support of this claim the exporter of the merchandise in question took the stand. He testified that he was the brother of the importer, but that neither had any financial interest in the business of the other, and all transactions between them were on an ordinary business basis. He testified that for 15 years he had his place of business in Barcelona, Spain, where he was engaged in an import and export business in general merchandise, including, in the last year there, drawn gut, and that he had sold such merchandise for home consumption as well as for export to various countries, including the United States.

He stated that he had purchased gut from jobbers and wholesalers located in different towns near Barcelona in the Catalonia district, and sold the same in Barcelona, but was unable to produce any records of his transactions for the reason that he had to leave Spain in haste for political reasons and was unable to bring them with him.

The witness testified that he was familiar with market conditions in the Barcelona district with reference to merchandise such as that at bar, and was likewise familiar with the activities of his competitors. He stated that a usual wholesale quantity of drawn gut was 1,000 strands, packed in 10 bundles of 100 strands each; that Barcelona was one of the principal markets of Spain for drawn gut such as that in issue; that the sale in question was made in the ordinary course of business, without any restrictions, and at the same price at which he offered the merchandise to anyone else, and that there was no difference in the price for export to the United States or other countries or for home consumption.

On cross-examination the witness adhered to his statements made on direct examination, but it is apparent that some language difficulties obtained. It does appear, however, that the witness never made any other sale for export to the United States except the one represented by the 3 appeals in question, and had never made

any other offer for sale of such merchandise for export to the United States. He stated that he knew there were other dealers in the Barcelona district who sold such merchandise for export to the United States, and "supposed" the price they sold it at was the same as for home consumption, but was unable to say of his own knowledge what they charged. On redirect examination the witness stated that he had talked to such other dealers as to their prices, but had never seen their books.

Plaintiff also called as a witness Willy Grunwald, sole owner of the plaintiff company and brother of the previous witness, who corroborated his statements with reference to the particular transaction here involved.

At the close of plaintiff's case counsel for the Government moved to dismiss the importer's appeals on 8 grounds, which are summarized in its brief as follows:

(1) That the importer testified that the invoice does not contain a statement of the currency at which this merchandise was bought and sold, and hence, the importer has not complied with the provisions of Section 481 of the Tariff Act of 1930;

(2) That the importer has failed to offer the slightest testimony as to the price at which such or similar merchandise was freely offered for sale for home consumption in Spain at or about the time of exportation of the imported merchandise;

(3) That the testimony does not show the price at which other manufacturers, producers, or sellers in the country of exportation freely offered and sold their merchandise in the ordinary course of trade in the usual wholesale quantities, and hence, the importer has failed to bring its case under the case of *United States* v. *International Forwarding Co.*, 27 C. C. P. A. (Cust.) 21, C. A. D. 56.

(4) That there was no testimony of probative value as to the price for exportation to the United States of such or similar merchandise, the exporter testifying that he made no offer to sell this merchandise to anyone in the United States, not even to his brother, and that the United States purchaser requested the exporter to purchase this merchandise for him.

(5) The exporter admitted that there were others in Barcelona, Spain, who sold such or similar merchandise in Barcelona, but he failed to indicate the price at which such or similar merchandise was freely offered for sale, contrary to the requirement of the *International Forwarding Co.* case, *supra;* that the testimony he may have given as to others was entirely hearsay.

(6) The evidence fails to show the existence of a foreign market, and if so, the price at which the merchandise was freely offered for sale.

(7) The evidence fails to show the existence of an export value, and if so, the price at which the merchandise was freely offered for sale.

(8) The importer has failed to meet every material issue in the case.

Point (1) has already been disposed of. Points (2) through (8) relate to the various elements of proof of value, and, specifically, to the sufficiency of the record in regard thereto.

Section 402 (a) of the Tariff Act of 1930 provides that the value of imported merchandise, for the purposes of that act, shall, if there be a foreign and an export value for merchandise, be the higher of the two. The statements of the witness, Arthur Grunwald, the

exporter, with respect to the various elements of foreign value are uncontradicted. Those statements were based upon his own experience in the sale of merchandise such as that in issue in the country of exportation for home consumption or for exportation to countries other than the United States. (The importations in question were made prior to the effective date of the Customs Administrative Act of 1938, limiting foreign value to the price at which merchandise is freely offered for sale for home consumption only.)

I am satisfied that the testimony of the exporter was sufficient to establish *prima facie* that the price at which merchandise such as that here in issue was, at the time of exportation of the instant merchandise, freely offered for sale to all purchasers in Barcelona, Spain, in usual wholesale quantities and in the ordinary course of trade, was the invoiced and entered value in each case, less packing; that Barcelona was a principal market of the country of exportation for such merchandise, and that such values were the foreign value, as defined in section 402 (c), *supra*, as it read prior to the passage of the Customs Administrative Act of 1938.

On the question of whether the export value of such or similar merchandise was higher than the foreign value, however, I conclude that the record does not contain competent evidence upon which a finding might be made other than the appraiser's finding. On this feature of the case there is the testimony of the exporter that his only personal experience in the sale of such merchandise for exportation to the United States was the sale covering the instant shipments, and that he, personally, made no offers of such merchandise for sale for exportation to the United States.

In *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276, it was said:

> The court below is quite correct in the statement that as a matter of law a single sale might establish an export value. But, in order to do so, it must appear from proof that such a sale accords with a free offering at that price—
>
> to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, * * * .

All of the proof that the instant sale accords with a free offering at the invoiced and entered prices as above outlined is based upon statements made to the witness "as to prices" by other people in the same line of business; in other words, it is based upon hearsay. It is inferable from the record that there was no formal market in Barcelona for dealing in merchandise such as or similar to that in issue, but only a number of dealers, and that no quotations were compiled by an authoritative source, nor were price lists issued by the individual dealers. I have no doubt that a dealer trading in such a market secures the information as to current prices which he must have to conduct his

business successfully from, among other things, statements made by others as to their transactions, and often is warranted in relying upon such information.

However, the type of evidence which would be satisfactory to permit a merchant to operate successfully is not necessarily of the quality required to prove an issue in a court of law. The statements of the people who gave information as to prices to the witness were made at a time and place where they could not be subjected to the tests of oath and cross-examination, and, since the circumstances of their utterance do not fall into any of the recognized exceptions to the hearsay rule, nor do they respond to the principles underlying such exceptions, testimony based upon them is inadmissible under the rule. See Wigmore on Evidence, 3d ed. (1940) vol. V, secs. 1361 *et seq.* and 1420 *et seq.*

In sec. 719 (vol. III) of the foregoing work the subject of knowledge of value with relation to the hearsay rule is discussed, and, among other things, the following is said:

Knowledge of value does not necessarily rest on hearsay. It might be supposed that to know value is merely to know what other people *say* the thing is worth,— merely to have heard them offering and accepting prices. But the answer is that these various instances of offers or acceptances of prices, averaged into a mean or probable figure, are what constitute value. The statements of persons declaring their estimates of the prices they would give or receive are not taken, on the credit of those persons, as trustworthy assertions of the fact of value, but merely as items of conduct which *in themselves make up* that total fact of conduct which we call value. Thus, if A sits in a merchant's office and listens to the terms accepted and rejected for a dozen articles, he acquires a first-hand knowledge of value; but if he goes in and asks the merchant to tell him the value of a given article, his knowledge is based on a belief in the truth of the merchant's assertion. In the former case, his knowledge is not based on hearsay. But in the latter case his knowledge is based on the hearsay assertion of another person, and therefore is inadmissible (under the principle of sec. 657, *ante*). The distinction depends upon whether the utterances heard represent in themselves a series of individual offers or transactions, or are merely reports of the net result of offers or transactions already made.

Reference to the cases cited in the footnote to the foregoing section shows that the distinction is not uniformly made in various jurisdictions. I recognize the difficulty under which the plaintiff in the case at bar labored to prove his case under the recent and present state of international affairs. It does not satisfactorily appear, however, that competent evidence bearing upon the subject was otherwise unavailable, or that the circumstances under which the hearsay statements were made were such as to evince their probable trustworthiness. There is, therefore, in my opinion, no reasonable ground upon which the witness' testimony based thereon could be admitted, and I am compelled to the conclusion that plaintiff has failed to prove a vital element of its case, namely, whether the export value was higher than the foreign value.

As hereinabove noted, defendant has moved to dismiss these appeals for lack of proof of the elements of the value contended for. I note, however, that section 501 of the Tariff Act of 1930 contains the following language: _

\* \* \*. The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

This presumption has not been overcome, and I therefore find the value of the merchandise at bar to be as returned by the appraiser. Judgment will issue accordingly.