MITCHELL SHIPPING & FORWARDING CO. v. UNITED STATES

**No. 6010.**—Invoices dated Winnipeg, Canada, July 29, 1941.
Certified July 29, 1941.
Entered at New York, N. Y., August 15 and October 18, 1941.
Entry Nos. 709138 and 720053.

(Decided May 15, 1944)

*William Whynman* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General *(Daniel I. Auster*, special attorney), for the defendant.

WALKER, Judge: The merchandise involved in these appeals for reappraisement consists of fur pieces of various kinds originally exported from Winnipeg, Manitoba, Canada, on or about July 29, 1941. The merchandise involved in reappraisement No. 149891–A consists of certain items taken from the foregoing shipment which were reexported to Canada but refused entry there, whereupon they were reimported.

It appears that during the latter part of July 1941, Bernard Lipschutz, who, on the witness stand, stated that he was engaged in a joint venture with one Julius Kupersmith, of New York City, purchased from a J. Stein of Winnipeg, Canada, a lot of unassorted fur pieces or waste for a total price of $359. These he had conveyed to a building in Winnipeg, where he sorted them according to kinds and repacked them into 23 bales. In the process of sorting, Mr. Lipschutz said, he threw out some of the pieces as worthless.

Prior to purchasing the merchandise from Mr. Stein, Mr. Lipschutz said, he made a canvass of the trade in Winnipeg and got "a pretty general idea of what price merchandise is offered at." It should be

noted that merchandise such as that at bar consists of the scrap or cuttings which accumulate from the process of manufacturing furs or fur garments, and it would appear that the value of any given lot would depend, in large measure, on the character of the pieces contained therein.

After his purchase of the merchandise involved in unassorted condition from Mr. Stein, and his subsequent sorting and repacking thereof, Mr. Lipschutz, with Mr. Stein, made out a bill for the merchandise, as assorted, assigning individual values for the various types or kinds of fur pieces as follows:

J. STEIN,
*182 Princess Avenue. Winnipeg, Man.,*
*July 30, 1941.*

Sold to:
J. Kupersmith,
236 W. 27th St.,
New York, N. Y.

| | |
|---|---|
| 285 lbs. Red Fox Tails & Waste @ $.15 | $42. 75 |
| 327 lbs. Red Fox Paws Nat. @ $.30 | 98. 10 |
| 890 lbs. Elec. Seal Gills @ $.10 | 89. 00 |
| 92 lbs. Dyed Squirrel Pieces @ $.20 | 18. 40 |
| 72 lbs. Raccoon Tails @ $.20 | 14. 40 |
| 162 lbs. White Coony Pieces @ $.20 | 32. 40 |
| 142 lbs. Black Lamb Heads @ $.45 | 63. 90 |
| | |
| Paid by check US funds | $358. 95 |

The foregoing, written on a piece of yellow paper, is in evidence as exhibit 4.

A consular invoice showing the foregoing values was made out and Lipschutz signed the same as shipper, but later a replacement invoice was filed "to correct name of shipper" and this was signed by Mr. Stein.

Of course, it seems strange that the total of the prices assigned the individual types of fur should equal, within 5 cents, the exact price paid for the fur in bulk, but it is Mr. Lipschutz' uncontradicted testimony that the individual prices assigned represented the market value in Winnipeg at that time.

The merchandise was subsequently exported; consigned to J. Kupersmith. It was entered in the name of the plaintiff, evidently a customhouse brokerage concern, which on the entry form declared Julius Kupersmith to be the actual owner thereof for customs purposes.

The merchandise was appraised at higher values for each type of fur involved, the total of the appraised value being more than 100 per centum in excess of the entered value.

Preliminary to taking the case up on the merits, I find that in the brief filed on behalf of the defendant, point 1 of the argument is entitled "The importer's appeals should be dismissed for failure of

compliance with all of the provisions of the tariff act relating to the entry and appraisement of merchandise," and under that heading the provision in section 501 of the Tariff Act of 1930, reading,

No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise.

and sections 481 (a) (2), (3), and (5) and section 484 (d) of the Tariff Act of 1930 are cited, apparently as the provisions of the act which were not complied with.

Section 481 deals with the contents of invoices. For the reasons set forth in *Agruba Trading Co.* v. *United States*, 11 Cust. Ct. 478, Reap. Dec. 5957, I am satisfied that failure of the invoice to comply with the provisions of section 481 is not a ground for denying the importer his right of appeal for reappraisement

Section 484 (d), *supra*, provides as follows:

SEC. 484. ENTRY OF MERCHANDISE.

\*     \*     \*     \*     \*     \*     \*

(d) SIGNING AND CONTENTS.—Such entry shall be signed by the consignee, or his agent, and shall set forth such facts in regard to the importation as the Secretary of the Treasury may require for the purpose of assessing duties and to secure a proper examination, inspection, appraisement, and liquidation, and shall be accompanied by such invoices, bills of lading, certificates, and documents as are required by law and regulations promulgated thereunder.

As to this section the defendant alleges:

The entry does not show that the merchandise was purchased in bulk, because it gives specific prices for definite articles and is accompanied by an invoice which likewise does not express the facts of the actual purchase as originally made.

Article 298 of the Customs Regulations of 1937, in force and effect at the time of importation of the merchandise in issue, appears to contain the requirements on entry, and it is clear that "such facts in regard to the importations as the Secretary of the Treasury may require," etc., as set forth therein were shown on the entries. It does not appear that any other "facts of the actual purchase as originally made" must be set forth on the entry, and failure to include them cannot be considered a ground for dismissing the appeals under the authority of the sections cited.

Point 1 of the argument in the brief concludes as follows:

It will also be noted, from the official notice to the importer of advance in value upon appraisement, that the appraised value exceeds the entered value by "plus 100%." In view of the foregoing, it is respectfully submitted that the importer's appeals for reappraisement herein should be dismissed for failure of compliance with the aforementioned provisions of the tariff act.

I am unaware of any provision of law which requires dismissal of an importer's appeal for reappraisement merely because the advance exceeds 100 per centum. It would seem, in view of the additional

penalties which obtain in such case, that the right of reappraisement is particularly necessary. I find no reason for dismissing the appeals herein.

On the merits of the case, I find that witness Lipschutz testified, in addition to that which has already been set forth, that the price of merchandise such as that in issue did not vary as to the quantity purchased, and that Winnipeg is a principal market in Canada for such merchandise. Assembling the testimony of this witness, which is uncontradicted, it appears that it establishes all the elements of an export value for such merchandise as defined in section 402 (d) of the Tariff Act of 1930, but neither it nor any other evidence made available establishes the existence or absence of a foreign value therefor, as defined in section 402 (c), as amended, or, if a foreign value existed, whether the same was equal to, or lower or higher than the export value.

It is essential in the presentation of a *prima facie* case in support 'of either foreign or export value that the facts referred to be established, for the reason that section 402 (a) interrelates the two and requires that in the event both exist the higher shall be the basis of value for the merchandise.

On the record presented, therefore, I have no other course but to hold that the plaintiff has failed to overcome the statutory presumption in favor of the value found by the appraiser, which I determine to be the value of the merchandise herein, and judgment will issue accordingly.