(R.D. 11543)

C. Pappas Company, Inc. *v*. United States

Entry No. 26056.

(Decided June 10, 1968)

*Princi & Lecomte* (*Peter W. Princi* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Arthur E. Schwimmer*, trial attorney), for the defendant.

Richardson, Judge: The merchandise of this reappraisement appeal consists of anchovies in olive oil which were exported from Portugal on February 27, 1963. The merchandise was appraised upon entry on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at $9 per case, net packed. The statutory basis of value is not in dispute. It is the contention of the plaintiff-importer that the proper dutiable value of the involved anchovies is $9 per case, net packed, less 3 percent. The Government contends that there has been a failure of proof of the contention advanced by plaintiff.

The difference between the claimed value and the appraised value is an item said to represent a discount. And the question before the court is whether at or about the time of exportation of the subject merchandise such or similar merchandise was freely sold or offered for sale in the principal markets of Portugal in the usual wholesale

quantities and in the ordinary course of trade for exportation to the United States at the claimed discount price.

The evidence in the record consists of the testimony of John C. Pappas, board chairman and treasurer of the plaintiff importing firm, who was called as a witness on behalf of the plaintiff. Defendant did not call any witnesses or offer any evidence.

Mr. Pappas testified that he has been engaged in the importing business for the past 50 years, and at one point stated that anchovies are a small part of the company's business. With reference to anchovies, the witness testified:

Q. Will you tell us what knowledge you have with reference to the importation of anchovies—specifically, from Portugal during the year 1963?—A. We are in touch—when I say "we": I am—through my buyers, and through the organization, with all sources of supply, with everybody's prices, with everybody's quotations, with everybody's practice, with everybody's quantity discounts, with everybody's offerings, and we choose the buyers—the sellers that, that we select as being the best, as far as quality is concerned and as far as price is concerned.

\* \* \* \* \* \* \*

Q. Are you familiar with the practices in Portugal with reference to the sale of anchovies—or, were you, in 1963, Mr. Pappas?—A. Yes, I am.

Q. Will you tell us what your knowledge is of their practices during that period?—A. Well, it's been a practice with all sardine and anchovy packers to offer their wares to importers of the United States at a price less an average discount anywhere from three to five per cent.

Q. Now, will you tell us what that discount is?—A. It's a discount that is allowed to direct importers, as against importers who buy through brokers.

Q. Can you tell us, if you know, what the practice is with respect to the purchase through brokers, purchases through brokers, as compared to purchases direct from the packer or manufacturer; if you know? . . .

\* \* \* \* \* \* \*

A. The practice has been for, for many years now, that the purchases direct with the packers by importers in the United States are on a basis of a three to five per cent discount; whereas, if purchases were made through brokerage firms in this country, in the United States, the broker gets that three or the five per cent, depending upon what the discount is.

On the matter of sales or offerings, the witness testified as follows:

Q. Do you know, Mr. Pappas, whether or not these anchovies, during the year 1963, were freely offered, at that time, on the foreign market, to American importers, on the basis that you just stated?

\* \* \* \* \* \* \*

A.  Printed offerings are usually sent to everybody.

JUDGE RICHARDSON:  You mean they are general offerings?

THE WITNESS:  General offerings.

\*  \*  \*  \*  .  \*  \*  \*

A.  (Continuing) General offerings are sent to importers in printed form, or by way of cables, or by way of letters, depending upon the practice of the shipper, but those offerings are usually freely made to every importer of any consequence in the United States.

On the matter of usual wholesale quantities, Mr. Pappas testified as follows:

Q.  Now, do you know in what quantities these are usually sold? The usual wholesale quantity; do you know? We are still talking about 1963.—A.  Yes.

Q.  We are confining ourselves there.—A.  I know fairly well, yes.

Q.  All right. I am going to show you the entry here, Mr. Pappas. (Handing to the witness.)
Can you tell us, of your own knowledge, what the usual wholesale quantities were during that period?—A.  Well, the usual wholesale quantities on anchovies is anywhere from 100 cases to 2,000 cases.

Q.  Does the entered value here represent the figure at which anchovies were offered at that time, to you, from the packer in Portugal?—A.  Yes.

Q.  And what type of an offer, or form did you receive from them, with reference to that particular——A.  I don't remember specifically, but I assume it is a result of cable—cables received from them and letters of credit that were opened.

It was brought out upon cross-examination of Mr. Pappas by counsel for the Government that the witness had not brought to court with him any of the written offers he received from the trade in Portugal, that the witness' testimony concerning the discount was based on the printed offerings as well as cables, correspondence, and telephone conversations that either he or his buyers had, that he never visited Empresa de Conservas Nereida, the seller of the instant merchandise, that someone in the company negotiated the involved transaction with the seller by letter or cable, that plaintiff bought anchovies in lots of 500, 1000 and 2000 cases, and that plaintiff was a substantial buyer of such merchandise.

The foregoing evidence, comprising all the evidence in the record bearing on the matter of export value of the subject merchandise, is insufficient, in the court's opinion, to establish a *prima facie* export value different from that returned in the appraisement. Much of the witness' testimony is predicated upon hearsay evidence not covered by any statutory exception to the hearsay rule, and which evidence, although sufficient to enable the importer to operate his anchovy busi-

ness, is not sufficient to be accepted as competent proof in a court of law. *Agruba Trading Co.* v. *United States*, 11 Cust. Ct. 478, 484-485, Reap. Dec. 5957, affirmed, 14 Cust. Ct. 338, Reap. Dec. 6104. As such, so much of the testimony given by the witness which is not based on his own knowledge, namely, information imparted to the witness from his buyers, correspondence and cables and the like, respecting prices, discounts, and terms and conditions of sale, being hearsay is entitled to be accorded no probative value. And it is obvious from the testimony that the conclusions of the witness were predicated for the most part upon such sources of information.

Also, it is equally clear that just because the prices quoted to the importer or the sales consummated between Empresa de Conservas Nereida and the importer included a discount, it does not follow that sales to all others included a discount also. There must be tangible evidence of this fact complying with the statutory requisites. The testimony of Mr. Pappas falls short of meeting the statutory requisites for finding export value. On the matter of usual wholesale quantities, the witness' testimony is nothing more than a statement of the ultimate fact in issue totally lacking in evidentiary facts other than as respecting quantities purchased by the plaintiff itself. On the matter of free sales or offers, the testimony deals entirely with the subject of offers and no effort was made by plaintiff to adduce evidence as to the lack of actual sales other than those at bar. And no evidence was adduced on the subject of principal markets in Portugal, or the usual course of trade, or whether the anchovy market in which plaintiff and Empresa de Conservas Nereida dealt with each other comprised one or more selected purchasers at wholesale or all purchasers at wholesale.

In view of these deficiencies in evidence, the presumption of correctness attaching to the appraised values has not been rebutted, and as such, it is unnecessary for the defendant to adduce any evidence to support the appraised values.

On the instant record, the court finds as facts:

1. That the imported merchandise consists of anchovies in olive oil which were exported from Portugal on February 27, 1963.

2. That said merchandise was appraised upon entry under 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at $9 per case, net packed.

3. That there is no evidence that at the time of exportation of the said merchandise, such merchandise was freely sold, or in the absence of sales, freely offered for sale at the aforesaid price less a 3 percent discount.

The court concludes as matters of law:

1. That plaintiff has failed to present evidence sufficient to rebut the presumption of correctness attaching to the appraised values.

2. That export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for determining the value of the involved merchandise.

3. That such export value is represented herein by the appraised values.

Judgment will be entered accordingly.