NEW ENGLAND FISH CO. *v.* UNITED STATES (No. 2784)[1]

---

[1] T. D. 42137.

United States Court of Customs Appeals, April 4, 1927

Barnes, McKenna & Halstead (*Samuel M. Richardson* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *Marcus Higginbotham*, special attorneys, of counsel), for the United States.

[Oral argument December 16, 1926, by Mr. Richardson and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, consisting of fresh halibut and salmon packed in ice, was assessed for duty by the collector at 2 cents per pound under paragraph 717 of the Tariff Act of 1922, which reads as follows:

PAR. 717. Fish, fresh, frozen, or packed in ice: Halibut, salmon, mackerel, and swordfish, 2 cents per pound; other fish, not specially provided for, 1 cent per pound.

It was claimed in the protest that the imported fish was the product of American fisheries, and, therefore, entitled to free entry under paragraph 1630, which reads as follows:

PAR. 1630. Oils, animal: Spermaceti, whale, and other fish oils of American fisheries, and all fish and other products of such fisheries; and all cod and cod-liver oil.

The collector overruled the protest and referred the questions in issue to the court below for decision. The report of the collector on the reference to the court below is as follows:

Respectfully referred to the Board of U. S. General Appraisers for decision.

The importations in question cover fresh fish claimed to be the product of American fisheries. From the report of Special Agent Jewell (copy herewith), it appears that when landed at Vancouver or Prince Rupert, as the case may be, the catch is sold outright at auction by the masters of the vessels to the various fish companies maintaining plants at said ports with facilities for freezing and storing in preparation for resale and shipment. *As the freezing and storing was done by others than the officers, master, and crew of the American vessels on which the catch was made and as it appears that the ownership changed while in a foreign port,* duty was assessed on the fish covered by entries 750842 and 751272, at 2¢ per lb. under paragraph 717, act of 1922. The 109 cases covered by entry 754729 were reported not found by the discharging inspectors and in the liquidation of

the entry due allowance was made therefor. Note T. Ds. 32138 and 39494, articles 436, 437 of the Customs Regulations, and department letter of March 9, 1923, and *collector's letter of June 22, 1923*, copies herewith. Protest was received within the statutory time. (Italics ours.)

The pertinent part of the collector's letter addressed to the Secretary of the Treasury, and expressly made a part of his official report by reference, is as follows:

The shipments of fish in question arrived in bond from British Columbia, and *consisted of fresh halibut and salmon taken by American vessels from the waters of the Pacific Ocean.*

It appears from a report of Customs Agent Watson, of Seattle, who made an investigation of the subject, that, *although the fish are taken by American vessels, yet, when landed at Vancouver or Prince Rupert, it is the practice of the masters of the vessels to sell the catch to certain fish companies doing business at said places, which have plants for freezing and storing the fish in preparation for resale; and that ownership of and title to the fish passes to said companies, and the masters of the vessels have absolutely nothing more to do with them.*

*In view of the practice described above it is the opinion of this office that the importations are not entitled to* free entry under paragraph 130 [1630] because:

First, the evidence developed shows that persons other than the master, officers, and crew of the fishing vessel, or persons employed for the purpose, were engaged in storing and freezing the fish on shore, which is in direct violation of the instructions in paragraph No. 4 of T. D. 32138, the provisions of which are reaffirmed in T. D. 39484; and—

Second, it is believed that *the sale of the fish in Canada to parties maintaining a plant in that country for storing and freezing changed the tariff status of the fish when entering the United States from a product of American fisheries to that of a foreign commodity.* (Italics ours.)

On the trial below the depositions of James L. Lee and Alvah L. Hager were introduced in evidence by appellant. Their testimony was given in response to interrogatories and cross-interrogatories.

The witness, James L. Lee, testified that he was manager of Atlin Fisheries (Ltd.); that the company was organized under the laws of British Columbia; that its principal place of business was Prince Rupert, British Columbia; that it was owned and controlled by the New England Fish Co., an American corporation; that his duties as manager of the Atlin Fisheries (Ltd.) consisted of—

buying fish on open market for shipment to the various branches of the New England Fish Co. Supervising the unloading of vessels, packing in ice in boxes and loading into refrigerator express cars for shipment. Also supervising of office work in connection therewith—

that the portion of the imported fish covered by entry 750842 was taken by the *Cora,* an "unregistered, undertonnage American fishing-vessel hailing port Tacoma;" that he had been informed by the Canadian collector of customs and the American consul at Prince Rupert, that the *Cora* was an American vessel; that the fish were not "sold to any concern in Canada but were purchased while still on board the American vessel *Cora* by me as manager of the Atlin

Fisheries Limited *for the New England Fish Co.*" (italics ours); that the merchandise did not enter into the commerce of Canada, and that no Canadian duty was paid thereon; that they were "bonded fish from the time they were taken from the hold of the vessel until they crossed the American border at the port of entry;" that the fish were landed from the vessel on the wharf of the Atlin Fisheries (Ltd.) and graded, packed in ice in boxes, and loaded in car C. N.–10035 for shipment to the New England Fish Co., under the supervision of the witness and the Canadian customs authorities; that, when the fish were loaded, the car was sealed with bond seals by the Canadian customs authorities.

The witness, Alvah L. Hager, testified that he was a resident of Vancouver, British Columbia, Canada; that he was vice president and western manager of the New England Fish Co., president, treasurer, and general manager of the Canadian Fishing Co. (Ltd.), president of the Atlin Fisheries (Ltd.), and in charge of all the business of the New England Fish Co. and its branches on the Pacific coast; that the Canadian Fishing Co. (Ltd.) was incorporated under the laws of Canada and owned the Atlin Fisheries (Ltd.); that the New England Fish Co. owned and controlled the Canadian Fishing Co. (Ltd.); that the fish covered by entry No. 751272 were taken by the American schooner *Kodiak*, in charge of Capt. Ole Larsen; that he had known for years that the *Kodiak* was an American vessel; that the records in the office of the American consul at Vancouver "show that the *Kodiak* was built at Seattle, Wash., in 1913, registered No. 211813, owner, Ole Larsen"; that he purchased the fish of Captain Larsen for the New England Fish Co.; that payment therefor was made by the "check of New England Fish Co., Seattle, Wash., branch, dated Seattle, Wash., September 26, 1922, check No. 418, in the amount of $3,382.03"; that the fish did not enter the commerce of Canada and that no Canadian duty was paid thereon; that the fish were discharged from the vessel and immediately packed in ice in boxes and put in refrigerator cars for shipment, and that the doors of the cars were sealed by the Canadian customs officials. In answer to the thirteenth cross-interrogatory, the witness said: "The fish in question were purchased by New England Fish Co., Vancouver branch, and sold to New England Fish Co., New York City branch." It also appears that the New England Fish Co. is an American corporation.

Upon this record the court below held that the evidence upon the question of the ownership of the vessels by which the fish were caught was hearsay; and, as there was no competent evidence to establish that the fish were the product of American fisheries, the importer had failed to sustain the claims alleged in the protest. Judgment was, therefore, entered overruling the protest, and the importer appealed.

It is claimed by appellant that it was found by the collector and conceded in his report that the fish were caught by American fisheries; that, while the testimony introduced on the trial relative to the status of the vessels might have been open to the technical objection of hearsay, no such objection was interposed, and that it should have been considered by the trial court as competent and sufficient proof thereof. It is further contended that, the fish having been taken by American fisheries, they were the product of such fisheries; and that they retained that character although packed in ice and shipped by others than the crews of the American vessels.

The Government contends that the appellant failed to introduce sufficient evidence on the trial below to overcome the presumption of correctness attending the collector's classification.

The court below based its decision upon the proposition that the appellant had failed to prove that the imported fish were caught by American fisheries. In this connection the court said:

> * * * The law requires, at least, in order that fish may be considered the product of American fisheries that they shall be taken by an American vessel; that is, a vessel of American registry and commanded by American citizens. * * *
>
> The law is very explicit with reference to the registration of vessels in the United States and proof of their registration is a matter of record which can not be shown by hearsay testimony. The master of the vessel must be a citizen of the United States. While one Ole Larsen was the owner of the *Kodiak*, there is nothing to show that he was a citizen of the United States and nothing is shown as to the master of the *Cora*. The latter was a vessel apparently of less than 20 tons, in fact, less than 5 tons, in which case it would not have been required to be enrolled. It would, however, be required to have a license. Nothing in this record is shown as to when or where this vessel was licensed or that she was licensed. One of the objects of the law is to protect American citizens and American enterprise in the taking of fish in the open sea, and proof of the fact that they are entitled to the privilege of free entry can be and should be conclusively made. "We hold in this case that the proof is not sufficient to show that the fish in question were the product of American fisheries. That being our view, it is unnecessary to discuss the other points in the case." * * *

The court evidently ignored all of the testimony relative to this question, on the ground that it was hearsay, and, therefore, incompetent. The record does not show that any objections were made to the introduction of the testimony. Considerable of it was undoubtedly hearsay. However, as it was received in evidence without objection, it should have been considered by the court. *United States* v. *Homestake Min. Co.*, 117 Fed. 481; *Paine* v. *Willson*, 146 Fed. 488.

We think that this evidence, although hearsay, was sufficient to establish that the fish were taken by American fisheries. Furthermore, the collector officially reported that the fish were taken by, or under the direction of, the officers and crews of American vessels, but that they had been landed in Canada and there sold to Canadian

companies, thereby losing their status as a product of American fisheries and becoming a foreign commodity.

Thus it appears that the evidence upon this was consistent with the finding of the collector.

Upon the question of whether the fish had lost their status as a product of American fisheries prior to importation, the appellant introduced considerable evidence. It plainly appears therefrom that the fish did not enter the commerce of Canada; that they were not sold to any Canadian company; that the fish covered by entry 750842 were purchased from the officers of an American vessel by an agent of the appellant and for its account; that those covered by entry 751272 were purchased from the officers of an American vessel by an agent of one of appellant's American branches located at Seattle, Wash., and sold to appellant; and that the fish were not advanced in condition or value after their purchase and prior to importation. They were graded, packed in ice, and immediately shipped under bond to the United States. The fact that the grading, packing, and icing were done by citizens of Canada for the appellant would not alter the character or status of the fish.

The collector was under the impression that they were sold at auction to Canadian companies; that they entered the commerce of Canada; and that they were later sold by those companies as their product to appellant. It appears from the evidence that such was not the fact.

It seems to us that if the fish in question are not entitled to be classified as the product of American fisheries it would be difficult, if not impossible, for American fisheries engaged in catching fish to receive the consideration intended to be extended by the provisions of paragraph 1630.

Article 499 of the Customs Regulations, 1923, reads in part as follows:

* * * Products of American fisheries when landed at a foreign port and there frozen, dried, or otherwise treated, purchased by foreigners and shipped to the United States for their account, would not be entitled to free entry, except as provided in T. D. 40089. The products of such fisheries may include fish, oil, bone, sponges, turtles, and all other marine products.

The pertinent part of T. D. 40089, referred to in article 499, reads as follows:

3. American-caught fish may be landed and sold in foreign territory to American or foreign purchasers, and such purchasers may ship the fish to the United States and enter the same free of duty under paragraph 1630 of the tariff act, provided the fish be shipped to the United States without their having been salted, dried, or otherwise preserved in the foreign country. Freezing the fish or packing them in ice to keep them in a fresh condition for shipment, or the removal of the heads, fins, or other refuse parts would not be a bar to their free entry under this ruling.

We think that the customs regulations quoted above, in so far as they apply to the issues in this case, are reasonable and consistent with the plain purpose of paragraph 1630.

The fish were caught by American fisheries; they thereupon became the product of such fisheries; and, in our opinion, their status as such product was not altered by anything that thereafter occurred prior to importation.

For the reasons stated the judgment is *reversed*.