UNITED STATES *v.* FISHER SCIENTIFIC Co. (No. 4162)[1]

United States Court of Customs and Patent Appeals, December 27, 1938

*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, *Richard F. Weeks* and *Dorothy C. Bennett*, special attorneys, of counsel), for the United States.

*Jerome G. Clifford* (*George W. Israel* of counsel) for appellee.

[Oral argument October 5, 1938, by Mr. Lawrence and Mr. Clifford]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, affirming the judgment of the single judge in a reappraisement proceeding.

---

[1] C. A. D. 27.

The merchandise is described as chemical glassware. It was imported from Germany in various shipments during the years 1934, 1935, and 1936, and entered at the port of Pittsburgh, Pa. A number of cases were consolidated for trial. Reappraisement 109969–A is the test case, the entries involved in the other cases being duress entries, which, as stated in the brief on behalf of the Government, "will follow the test case."

It is proper to say that while the papers in the cases indicate purchases from and exportations by several different German individuals, firms, or corporations, the only cases before us are those in which exportations were made, respectively, by Wilhelm Juffa & Co. and Gustav Deckert, who are either German manufacturers of or dealers in merchandise such as that involved. As to the importation from Deckert, Government counsel, as hereinafter explained, sought to raise before us a separate question.

The facts out of which the controversy grew may be stated broadly as follows: Under some German law, decree, or arrangement, the text of which does not appear in the record, German manufacturers of this type of merchandise may, under conditions of which we are not advised, purchase what is referred to in the record as "scrip" to the extent of 25 per centum of the list prices quoted in their catalogs, and upon their sales for export if they make deductions from such list prices they receive compensation for such deductions from the German Government. In the test case the importer received from the exporter a discount of 20 per centum from the prices listed in the catalog, and entry was made at a value which represented the catalog prices less such 20 per centum discount. The local appraiser at Pittsburgh advanced the values to the catalog prices without discount of the 20 per centum item. Importer thereupon appealed for reappraisement.

At the trial the importer introduced the testimony of Mr. Walter G. Roy, an examiner of merchandise at the port of Pittsburgh, and, at the time of the entries involved, an acting appraiser. At the conclusion of his testimony counsel for the importer announced "The importer rests," and counsel for the Government said:

I move to dismiss these petitions to reappraisement on the ground the importer did not submit any substantial evidence to warrant it obtaining any relief before this court. * * *

The motion was taken under advisement by the single judge (being later dismissed by him in his decision upon the merits) and counsel for the Government then introduced a special agent's report with certain exhibits thereto, the whole being marked as Collective Exhibit 1. The foregoing constituted all the evidence which was formally offered, but certain statements appearing on the invoices were subse-

quently treated as evidentiary in character by the appellate division, as later will be detailed.

The only point of difference between the single judge and the appellate division shown in their respective decisions relates to the matter of foreign-market value.

The single judge found "That there is no foreign-market value of the instant merchandise," and that "the export value is the correct dutiable value of the instant merchandise," saying:

* * * what was the price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Germany in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at the time of the exportation of the instant merchandise? Not the price the manufacturer *actually* received, for he received a 25 per centum scrip benefit or bounty from his Government in each sale of such or similar merchandise for export to the United States and then gave each purchaser of such or similar goods a credit of 20 per centum of said scrip benefit or bounty. So, the price paid by all purchasers of such or similar goods for export to the United States was not the price actually received by the manufacturer, but said price received by him, less 20 per centum discount. * * *

The single judge then found that the entered value correctly represents the export value as defined, and held the entered value to be the correct value for duty purposes.[2]

Upon the question of foreign-market value the appellate division says:

* * * Every consular invoice involved carries a statement to the effect:

The market value of this merchandise for home consumption in Germany is as follows:

Reichsmark_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

This is followed by a statement of the amount of the particular invoice with perhaps a few cents variations or else the statement is to the effect that—

Home market value, taxes included, is in no case higher than the invoice price.

The consular invoices are verified by the affidavit of the exporter and therefore constitute some evidence of the facts stated therein. We, therefore, find that there is a home market value in Germany for the products involved, but that the same is no higher than the export value.

In the appeal to us, the Government made no assignment of error based upon the evidentiary character of the statements appearing upon the invoices on which the appellate division predicated its finding respecting foreign-market value. In its original brief it was said:

The record conclusively shows that the appraised value, the export value and the foreign market value are the same.

It is not denied that the export and foreign values are the same, as held by the lower court, *excepting that it is denied that a 20 per centum deduction from the catalogue prices is applicable to either value.*

---

[2] In his decision the single judge also expressed the view that the case presented a situation in which the provision of section 303 of the Tariff Act of 1930, relating to countervailing duties, should have been invoked. This matter was not alluded to by the appellate division, and it is not an issue before us.

This court saw fit to request supplemental briefs upon the evidentiary character of the statements and these were furnished. In the supplemental briefs counsel for the respective parties concur in the contention that the statements properly may be treated as evidentiary and both recite that no assignment of error was made respecting their being so treated below. The supplemental brief on behalf of the Government says:

The Government earnestly contends that by reason of the provisions of Sections 481, 484, and 501 of the Tariff Act of 1930, the invoices herein, in their entirety, are legally a part of the official record transmitted to the United States Customs Court by the collector; and that it was unnecessary that any part of the said invoices be offered in evidence by special motion.

Provisions of the statutes and of the customs regulations are then quoted, and the supplemental brief continues:

The Government contends, alternatively, that the question of whether the said invoice statements are properly in evidence cannot be raised at the present stage of the proceedings in this Court, for the following reasons:

*First.* The said invoice statements were not objected to by counsel for either party at the trial before the single judge, and

*Second.* The said statements were considered as evidence and weighed by the lower courts, without objection, and no error with respect thereto has been assigned in the instant appeal.

On this state of the record, it is respectfully submitted that the rule announced in the cases of *United States* v. *Masson*, 3 Ct. Cust. Appls. 168, T. D. 32459; *United States* v. *Borgfeldt*, 11 Ct. Cust. Appls. 129, T. D. 38934; *United States* v. *Davies, Turner Co.*, 13 Ct. Cust. Appls. 547, T. D. 41430, and *New England Fish Co.* v. *United States*, 15 Ct. Cust. Appls. 34, T. D. 42137, is equally applicable in the cases at bar and the consular invoices with their market value notations, are properly in evidence before this Court.

We express no view as to the evidentiary character of the statements or as to their value as such, opinion on those matters being expressly reserved. They were accepted and weighed by the appellate division, and upon the record presented they must be treated, for the purposes of this case, as having constituted a part of the evidentiary record.

It should be said at this point that the Government made no assignment of error in the appeal to us to the effect that there is *no substantial evidence* to support the appellate division's express findings upon the question of foreign-market value above quoted. There are assignments capable of being construed as challenging such findings upon the basis of the *weight* of the evidence, but, as repeatedly has been held, it is not a function of this court to weigh the evidence in a reappraisement proceeding. *United States* v. *Rodier, Inc.*, 23 C. C. P. A. (Customs) 336, T. D. 48196, and cases therein cited.

It is obvious that the appellate division deemed the statements on the invoices to be substantial evidence of two facts—(a) the existence of a foreign-market value, and (b) that such value is no higher than the

export value.   As to finding (a), the Government not only agrees to, but insists upon, its correctness.   With respect to finding (b), however, the insistence in the supplemental brief seems to be that the invoice statements do not constitute any substantial evidence to support it. It is here repeated that there is no assignment of error concerning this point in the appeal to us.   We therefore decline, in this case, to consider whether such statements do or do not constitute any substantial evidence of foreign-market value.

Much of the Government's supplemental brief is devoted to arguing that there are certain distinctions between the Juffa and the Deckert invoices.   It is asserted that investigation by the special agent was made only in the Juffa establishment.   It is conceded, however, that a stipulation was entered into between counsel "that this [the Deckert] firm received the same scrip benefit from the German Government as did the Juffa firm," and that statements having the same purport as those quoted, *supra*, in the decision of the appellate tribunal, appear on the Deckert invoices.

The gravamen of the Government's contention on this point relates to prices shown on the Deckert invoices.   A table is given, based upon calculations converting German currency into United States currency, from which calculations it is argued that:

\* \* \* the foreign values declared on the Gustav Deckert invoices are considerably higher than the export value for which the importer is contending in the case at bar.

Counsel for appellee in a supplemental paper challenged the accuracy of appellant's calculations and this became a matter of controversy. Under the view which we entertain, it is not thought that such issue is before us for determination.

In the first place, there is no assignment of error directing attention to it, and, in the second place, the entire procedure in all the courts (until the question was raised in the Government's supplemental brief) has been based upon the theory that the duress entries, including all of those involved, made of goods received from both Juffa and Deckert, rest upon the same basis of fact and law as the test case. We think it too late now to inject that issue.   It is not jurisdictional in its nature, and, even if considered, it would seem to go to the *weight* of the evidence rather than to the question of whether there is *any substantial evidence.*

Upon the record presented, the judgment of the United States Customs Court is *affirmed.*