AGRUBA TRADING CO. *v.* UNITED STATES
AND
UNITED STATES *v.* AGRUBA TRADING CO.

No. 6104.—Invoices dated Barcelona, Spain, October 25, 1937, etc. Entered at New York, N. Y., December 3, 1937, etc. Entry No. 97707, etc.

## Second Division, Appellate Term

(Decided February 26, 1945)

*William Whynman* for the importer.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the United States.

Before TILSON, KINCHELOE, and LAWRENCE, Judges; TILSON, J., not participating

LAWRENCE, Judge:   Three appeals for reappraisement filed by the importer were consolidated and tried as one case below.

Near the close of the trial the Government moved—

\* \* \* to dismiss the importer's appeal for reappraisement upon the ground \* \* \* that the exporter has testified that the invoice does not contain a statement of the currency in which this merchandise was bought and sold, and hence it is not a compliance with the provisions of section 481 of the Tariff Act of 1930 \* \* \*.

We assume that, although the motion was addressed to the "appeal" in the singular form, it was meant to relate to the entire case, in view of the act of consolidation.

This motion was taken under advisement by the trial judge, and in his determination of the case the motion was denied.

Concerning the value of the merchandise, the trial judge was of the opinion that the importer had failed to overcome the presumptively correct export value found by the appraiser for the drawn gut in controversy, imported from Spain in 1937, and accordingly deter-

mined the value of the merchandise to be that returned by the appraiser (Reap. Dec. 5957).

Each of the parties to this litigation has filed an application for review of the decision and judgment of the trial judge.

We shall consider first the application of the Government which alleges that the court below erred in the following particulars:

1. In denying the motion to dismiss importer's appeals, said motion having been made by the Government upon the grounds that the invoice did not contain a statement of the currency in which the merchandise was bought and sold, as required by section 481 of the Tariff Act of 1930.

2. In finding and holding:

* * * that the testimony of the exporter was sufficient to establish *prima facie* that the price at which merchandise such as that here in issue was, at the time of exportation of the instant merchandise, freely offered for sale to all purchasers in Barcelona, Spain, in usual wholesale quantities and in the ordinary course of trade, was the invoiced and entered value in each case, less packing; that Barcelona was a principal market of the country of exportation for such merchandise, and that such values were the foreign value, as defined in section 402 (c), *supra*, as it read prior to the passage of the Customs Administrative Act of 1938.

The conclusion we have reached herein renders it unnecessary for us to review the second assignment of error.

The nature of the first assignment, however, requires that it be disposed of before considering other phases of the matter.

It is the contention of the Government that since the exporter has testified—

* * * that the invoice does not contain a statement of the currency at which this merchandise was bought and sold, * * * the importer has not complied with the provisions of Section 481 of the Tariff Act of 1930; * * * .

The motion was evidently predicated upon the provision in section 501 of the Tariff Act of 1930 (46 Stat. 590), which provides in part that—

* * * . No such appeal filed by the consignee, or his agent shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise.

Pertinent portions of the testimony of the exporter with reference to the currency of the invoice are here set forth:

Q. Will you please explain why the invoice was made out in American dollars when your currency of sale was in pesetas?

A. When I had ready for shipment, I made the invoice, and I go to the American consul, and I ask for the consular invoice, which I understand is the blue one. He told me that has to be in dollars, so I say, "What I have to do?" I asked what kind of rate, so he told me at the rate of 17 pesetas for one dollar, so I go back and make this invoice out. I converted the pesetas into dollars at the rate of 17, what the consul told me, and I go back and give him the consular invoice and showed him the bills, and he told me to come an hour later, and I have to pay $2.50, and I shipped it out to the United States. That is why I get here dollars converted from the pesetas.

Q. So that the price in pesetas that you sold to your brother can be determined by multiplying the American dollars by 17; is that right?—A. Yes, you

have to get the exact price what is the pesetas if you take the dollar at 17 pesetas per dollar.

Q. You say you were told to do that by the American consul, to change your pesetas on the invoice into dollars?

A. Yes.

In the light of this evidence it is obvious that the witness was precluded by the American consul from setting forth on the invoice a statement of the currency—pesetas—in which the merchandise was bought and sold. Moreover, the witness also testified that the law of Spain required that in all invoices destined for foreign countries the currency should be stated as that of the country to which shipment was made, that is, if to France, in francs; if to England, in pounds, etc. It is difficult to believe that in circumstances such as these, if for no other reasons, the Congress ever intended the provision in section 501, *supra*, together with section 481 (a) (5) or (6) of said act, to deprive the consignee or his agent of the right of review on appeal for reappraisement.

In denying the Government's motion to dismiss, the trial judge followed our decision in *Dwyer & Wedemann* v. *United States*, 27 Treas. Dec. 261, T. D. 34809. In that case, which was decided in 1914, the motion to dismiss was predicated upon a provision in paragraph M of section III of the Tariff Act of 1913 (38 Stat. 114) which read:

* * * if the importer, owner, agent, or consignee of such merchandise shall deem the appraisement thereof too high, *and shall have complied with the requirements of law with respect to the entry and appraisement of merchandise*, he may within ten days thereafter appeal for reappraisement by giving notice thereof to the collector in writing. * * *. [Italics supplied.]

As expressed in the opinion in that case, the Government there urged that the invoice did not contain—

* * * a true and full statement of the time when, the place where, the person from whom the same (the merchandise involved) was purchased or agreed to be purchased, * * *.

as required by paragraph D of said act of 1913, a predecessor of section 481, *supra*.

The *Dwyer & Wedemann* case was quoted at length and with evident approval by the trial judge herein. It is so ably reasoned, and the facts of that case so closely parallel the facts here, as to justify its repetition. We there said in part:

Paragraph F of said section [3] provides:

That whenever merchandise imported into the United States is entered by invoice, a declaration upon a form to be prescribed by the Secretary of the Treasury, according to the nature of the case, shall be filed with the collector of the port at the time of entry * * *.

Paragraph M of said section grants to every importer the right of appeal to reappraisement whenever he may deem an appraisement too high, provided he has complied with the law covering entry.

In this case the importer filed an invoice, as required by paragraph F, and made his entry thereon, which the collector accepted. Subsequently the appraiser, to whom the papers were forwarded, appraised the merchandise, making the advance here complained of.

If the collector did not consider the invoice to be in conformity with paragraphs C and D of said section 3, tariff act of 1913, we think that he should have refused entry thereon and required the importers to give bond to produce a corrected invoice; but having failed so to do, and the invoice having been accepted as sufficient for purposes of entry and appraisement, we do not think the importer is thereafter to be denied his statutory right of appeal to reappraisement on the ground that he has failed to comply "with the requirements of law with respect to the entry and appraisement of merchandise."

It may be noted that paragraphs C and D referred to in the preceding paragraph were similar in substance to sections 481 and 482 of the Tariff Act of 1930.

The opinion also points out that—

It is impossible for us to conceive under what construction of the law it can be claimed that, after an importer has entered his goods and the same have been duly appraised by the appraiser, there is no course left open to the importer to take an appeal from said appraisement. If this doctrine should be declared sound, then the appraiser might, with the same propriety that he advanced the merchandise in this case 5 per cent in value, arbitrarily advance the value of any merchandise to the point of seizure, without any recourse or right of appeal being available to importers.

Paragraph D contains no provision penalizing a failure on the part of importers to comply literally with its terms. It certainly does not provide that an importer who fails to show on his invoice the details required should be denied the right of appeal from an appraisement of his merchandise.

Failure to fully set forth on the invoice and entry the data required by law does not necessarily call for a dismissal of these proceedings, especially in view of the fact that both the collector and appraiser have duly and officially passed upon the merchandise covered thereby.

In concluding that the motion to dismiss the appeal therein should be denied, it was stated:

This appeal having come on regularly to be heard and this board having acquired jurisdiction of the subject matter thereof for the sole purpose of ascertaining and determining the "actual market value and wholesale price of the merchandise at the time of exportation to the United States in the principal markets of the country whence the same has been exported," we are decidedly of opinion that to deny an importer his statutory right of appeal merely because his invoice does not contain the data required by law, although his entry papers are in proper legal form, would be an act in excess of the legal authority of this board and without warrant of law.

Following the guiding principles above enunciated, further discussion of this phase of the present case might well end here by approving the holding of the trial judge—

* * * that the failure of the invoice to comply with the provisions of section 481, supra, is not a ground for denying the importer his right of appeal for reappraisement, and the motion to dismiss the appeals is accordingly denied.

However, in view of the prevalence of motions of this nature during the past few years, we are prompted to express added reasons why we believe the motion to dismiss for the alleged failure to comply with the requirements of section 481, *supra*, should be denied.

We have been afforded neither argument nor authority in support of the motion to dismiss. This is not surprising in view of the fact that our independent research fails to reveal any authority favorable to such contention. Neither is it supported by either the legislative or the judicial history of sections 481, 482, 484, 485, and 501 of the Tariff Act of 1930, and their antecedents.

So far as pertinent to this discussion, the language of section 501, *supra*, requiring compliance "with all the provisions of this Act relating to the entry and appraisement of such merchandise," has been on the statute books, in substance, for more than 50 years. It stems from section 13 of "An act to simplify the laws in relation to the collection of the revenues," approved June 10, 1890, commonly referred to as the Customs Administrative Act of 1890 (26 Stat. 131) which read, so far as here pertinent:

\* \* \* if the importer, owner, agent, or consignee of such merchandise shall be dissatisfied with the appraisement thereof, and shall have complied with the requirements of law with respect to the entry and appraisement of merchandise, he may, within two days thereafter give notice to the collector, in writing, of such dissatisfaction, \* \* \*.

That provision, with amendments not necessary for us to consider here, was continued in effect to and including paragraph M of section III of the Tariff Act of October 3, 1913, *supra*.

The provision in paragraph M, *supra*, which was interpreted in the *Dwyer & Wedemann* case, *supra*, was reenacted as section 501 of the Tariff Act of 1922 (42 Stat. 858) without essential modification. As reenacted it read:

\* \* \*. No such appeal filed by the consignee, or his agent, shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise.

This provision was repeated *verbatim* in section 501 of the Tariff Act of 1930 (46 Stat. 590).

While the language quoted from section 501, *supra*, was changed somewhat in phraseology from the corresponding provision in paragraph M, *supra*, it seems not to have been changed in meaning. This is clearly indicated by judicial decisions rendered since the passage of the tariff acts of 1922 and 1930, *supra*, which will be discussed presently.

In deciding cases under the latter two acts, where motions have been made to dismiss appeals for reappraisement for the alleged failure to comply with the requirements of section 481, *supra* (as well as section 484 relating to entries), this court has consistently

followed the principles enunciated in the *Dwyer & Wedemann* case, *supra*, so that for 30 years we have had an unbroken line of decisions by, this court adhering to the doctrine of that case.

One of the earliest cases involving a motion to dismiss an appeal for reappraisement, pursuant to section 501 of the Tariff Act of 1922, is *F. M. Van den Bosch* v. *United States*, Reap. Circ. 33398, decided May 8, 1923. There, an invoice of diamonds was made out in Belgian francs and entry was made in that currency. Subsequently it came to the attention of the appraiser's office that the merchandise was purchased in Netherlands florins and pounds sterling. In the course of its opinion the court said:

At the hearing the importer testified he did not know whether the currency of purchase was other than as stated on the invoice, and believing such to be the currency he made entry therein. It developed afterwards, as stated, probably the merchandise was not purchased in that currency.

The Government moved to dismiss the appeal in that case on the ground that the invoice was not correct and true, relying upon the quoted provision in section 501, *supra*. As to this the court observed:

This section has been construed and held that where entry was not made an appeal to reappraisement would be unavailing. [See Circular 33244, reappraisement 12272–A; Levi Sondheimer & Co.'s case, G. A. 8043, T. D. 37077.]

I do not believe the facts in the case at bar fall within the *Philipp Deutsch* case (Circular 33244) above referred to, decided April 2, 1923. In that case an entry was not made in any way or form. There was not a compliance with the law, and reappraisement would not lie. In the case at bar there was an entry, presumptively correct. *If, in fact, incorrect as to currency, I do not believe that would invalidate the entry.* [Emphasis added.]

It may be noted in passing that the court in that case commented upon section 484 of the Tariff Act of 1922 as follows:

The section of the statute of 1922, being section 484 (d), would indicate this entry was a legal one. Notwithstanding it may have been in a currency different from that of purchase, I do not believe that it is an invalid entry. It was received by the collector and appraisement had thereon. I find therefore the entry was valid, and the motion of the Government to dismiss is overruled.

A case decided since the passage of the Tariff Act of 1930 is *Alpha Silk Throwing Co., Inc.* v. *United States*, 67 Treas. Dec. 1408, Reap. Dec. 3550, decided February 13, 1935, and affirmed in 68 Treas Dec. 1278, Reap. Dec. 3663. It was there conceded by counsel for plaintiff that the names of both the seller and the purchaser were incorrectly stated in the invoice. It appears from the opinion of the trial court in that case that the only explanation offered by plaintiff for the alleged noncompliance with the plain terms of the statute (section 481) was that the manufacturer, one Emil Adolff, might have made out the invoice in this manner because of an apparent exclusive agency arrangement with one J. E. Bernitz of New York, and his desire to hide from Bernitz the fact that he was shipping direct to the United

States in violation of his agreement with Bernitz. To quote from the opinion of the trial court:

It is evident from this testimony that the witness knew at the time of the entry of this merchandise that his brother in Germany was not the seller thereof, and that although possessed of a copy of the invoice he made no effort to inform the customs officials of the incorrect statement in the invoice.

The trial court reviewed various decisions, and with respect to *Dwyer & Wedemann* v. *United States, supra,* made the following observation:

Inasmuch as the last cited case has never been reversed, and since the present entry was lawfully made by the consignee, as shown by the bill of lading accompanying the invoice, I hold as matter of law that this court has jurisdiction to entertain this appeal and to determine the dutiable value of the merchandise involved herein.

It will be recalled that the gravamen of that case was "that the names of both the seller and purchaser were incorrectly stated in the invoice."

Although the validity of appeals for reappraisement under section 501 of the tariff acts of 1922 and 1930 has been raised in several cases in the United States Court of Customs and Patent Appeals, notably *United States* v. *Alatary Mica Co.*, 17 C. C. P. A. (Customs) 284, T. D. 43962, the same case, after remand, 19 C. C. P. A. (Customs) 30, T. D. 44871; *United States* v. *V. M. Davis, Sinai Kosher Sausage Factory*, 20 C. C. P. A. (Customs) 305, T. D. 46087; *United States* v. *F. B. Vandegrift & Co. et al., Kimball Glass Co.*, 26 C. C. P. A. (Customs) 360, C. A. D. 42; and *United States* v. *Railway Express Agency, Inc., Agent for Blue Stock Fur Ranch*, 28 C. C. P. A. (Customs) 314, C. A. D. 161, in only one of them, namely, *United States* v. *V. M. Davis et al., supra,* did that court pass squarely upon a motion to dismiss an appeal for reappraisement pursuant to the provision in section 501, *supra.*

The Government there contended that the importer had not conformed to section 484 of the Tariff Act of 1922 (corresponding with section 484 of the Tariff Act of 1930) relating to the entry of merchandise. The merchandise under consideration in that case was koshered meat. The court referred to the fact that an individual, who described himself as the seller in the invoices which bore his signature, and whose affidavit was received in evidence, knew at all times that the market value of koshered meat specially prepared was on the average 1 cent per pound higher than the value of unkoshered meat, but that despite this knowledge, the invoice price was for nonkoshered meat, and the invoices did not show that the meat was koshered.

The court was of the opinion that the entry described the quantities and kinds of merchandise substantially within the terms specified in paragraph 706 of said act, and treated the same as one "primarily of

undervaluation of the imported merchandise." To quote from the opinion of the court:

If an incorrect statement of value in an entry bars an importer from an appeal to reappraisement as the Government seems to contend, then in every case where the appraiser advances the entered value the Customs Court would have no jurisdiction to entertain the appeal unless it found the entered value to be the proper appraised value. In other words, under the Government's theory an importer could secure no relief if the court found upon reappraisement that the appraised value was less than that fixed by the local appraiser but more than the entered value, and in such case the court would be compelled to dismiss the appeal to reappraisement for want of jurisdiction upon the ground that the importer had not complied with the law requiring the entry to state the value of the merchandise imported.

Further, the court significantly added:

We do not think that jurisdiction of the court upon reappraisement is dependent upon a *correct* statement of the value of the merchandise imported, either in the *invoice* or the *entry;* * * *. [Last two emphases added.]

If, therefore, an incorrect statement of the value of merchandise "either in the invoice or the entry" does not render an appeal for reappraisement fatally defective under section 501, *supra, a fortiori,* a failure to state the currency of purchase as in the case at bar, does not create an infirmity invalidating the appeal.

Upon this phase of the case, reference is made to the *Railway Express* case, *supra* (28 C. C. P. A. (Customs) 314) for the purpose of pointing out that our appellate court noted the fact that the motion to dismiss therein had also been made before the trial judge. We quote:

In disposing of the motion to dismiss, the trial judge said:

At the close of the case on the part of the plaintiff the Government attorney moved to dismiss the appeal to reappraisement upon the ground that the plaintiff had failed to comply with the requirements of the Tariff Act of 1930 (sections 481, 482, 485, and 501). In short, the Government claims that the invoice does not disclose the facts deemed necessary to a proper appraisement, examination, and classification of the merchandise. In this connection we note that article 277 of the Customs Regulations of 1931 provides that collectors will reject certified invoices which are not made in accordance with the regulations. It is presumed that the collector did his duty in the instant case, and followed the regulations. As he did not reject the invoice the presumption is that he found sufficient information thereon to comply with the statute and the regulations thereunder. The motion to dismiss is therefore denied.

Implicit in this reference by our appellate court is its apparent approval of the reasoning of the trial judge in that case.

Instances in which motions to dismiss, pursuant to section 501 or its antecedents, were granted are illustrated by the following cases:

*Levi Sondheimer & Co.* v. *United States,* 32 Treas. Dec. 316, T. D. 37077, decided March 21, 1917. The court there dismissed an appeal for reappraisement on the ground that importers had not complied with the requirements of law with respect to the entry and appraisement of merchandise, as required by paragraph M of section III of the Tariff Act of 1913, *supra.*

It appears that the appeal then before the court related to a so-called "Informal Entry of Packed Package Inclosures Not Exceeding $100 in Value" which, it was contended by the Government, did not constitute "a lawful entry" within the meaning of said paragraph M. In the course of its opinion the court there pointed out that—

As long ago as 1867 the courts held that no reappraisement on appeal can take place *unless there is a previous entry followed by an appraisement* (28 Cases of Wine, 24 Fed. Cas., 415), and that decision has been *since followed* by the Board of General Appraisers. Lloyd Bros.' case, G. A. 6468 (T. D. 27680); Wyman's case, G. A. 6536 (T. D. 27887); Downing's case, G. A. 6732 (T. D. 28814). [Italics supplied.]

*Oriental Trading Art & Looms Co. (Inc.)* v. *United States,* 59 Treas. Dec. 650, T. D. 44725, decided March 16, 1931.

In that case the value of certain Chinese embroideries was stated in an informal paper by an employee of the Post Office Department, and duty was paid thereon by the importer. An appeal from such valuation was dismissed by the court upon the ground that the importer had not complied with the provisions of section 501 of the Tariff Act of 1922 in making formal entry of the merchandise.

Reverting now to the *Dwyer & Wedemann* case, *supra,* it would seem that had Congress been dissatisfied with the doctrine of that case as applied to section 501 of the Tariff Act of 1922, it had ample opportunity to remedy the situation when it enacted section 501 of the Tariff Act of 1930, but apparently it did not see fit to do so. For these reasons, therefore, it might appropriately be said that the course of legislation upon this subject amounts to congressional approval of the doctrine of that case.

Furthermore, we are clearly of the opinion that the provision above quoted from section 501 does not contemplate compliance by the consignee or his agent with the terms of section 481 as a condition precedent to the validity of an appeal for reappraisement. That provision expressly confines its application to compliance "with all the provisions of this Act relating to the *entry* and *appraisement* of such merchandise." [Emphases added.] Upon examination of other provisions of said act of 1930, it will be observed that section 481, *supra,* is entitled "Invoice—Contents"; section 482—"Certified Invoice," while section 484 bears the title "Entry of Merchandise" and section 485 relates to the "Declaration," and sets forth the requirements imposed upon every consignee in making entry under the provisions of section 484. Other sections of the act may also be noted which refer expressly to "entry." See sections 487, 490, and 498.

Section 500 refers to "Duties of Appraising Officers"; section 501 to "Notice of Appraisement—Reappraisement"; and section 502 to "Regulations for Appraisement and Classification."

With these facts in mind we conclude that the language of section 501 reading "unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise" does not relate to invoicing (sections 481 and 482, *supra*).

This view was expressed by the late Judge Brown in a concurring opinion in *United States* v. *Alatary Mica Co.*, Reap. Circ. 1824 (1930), from which we quote:

Section 501 is a remedial statute which provides a necessary legal remedy and is not to be construed in a way which in many cases would destroy such necessary legal remedy. It does not mention invoicing, and invoicing and entering are two separate things.

To bring invoicing in by construction would violate the fundamental rule of statutory construction, that in applying remedial statutes, as Sutherland on Statutory Construction says (Sec. 430 Ed. of 1891):

Liberal construction is given to suppress the mischief and advance the remedy. For this purpose  * * *  it is a settled rule that everything may be done in virtue of the statute in advancement of the remedy that can be done consistently with any construction.

While the word "entry" may have different meanings, depending upon the context (*United States* v. *Legg*, 105 Fed. 930), its use in sections 484 and 485, *supra,* doubtless has reference to the document filed at the customhouse by the importer at the time of importation. We perceive no reason for ascribing any different meaning to the word "entry" as it appears in section 501, *supra.*

The foregoing considerations lead us to the conclusion that section 481, *supra,* is not within the orbit of section 501, *supra.* Consequently, failure of the invoices herein to state the currency "in which this merchandise is bought and sold" does not present an appropriate ground for dismissal of the appeals for reappraisement. We accordingly hold that the trial judge properly denied the motion to dismiss.

On the merits of the case the trial judge held that the importer had not overcome the presumption of correctness attaching to the export value of the merchandise as found by the appraiser.

It appears, as stated in the opinion below (Reap. Dec. 5957) that the exporter— ·

* * * was a brother of the importer, but that neither had any financial interest in the business of the other, and all transactions between them were on an ordinary business basis.

The exporter testified that he had carried on an importing and exporting business in Barcelona, Spain, for 15 years, dealing in general merchandise; that during his last year there he had sold drawn gut for home consumption as well as for export to various countries including the United States; that he purchased gut from jobbers and wholesalers located near Barcelona which he sold in that city; that he was unable to produce records of his transactions for the reason

that he was compelled to leave Spain hurriedly for political reasons and had no opportunity to bring such records with him.

The witness testified to his familiarity with the market conditions in the Barcelona district with reference to the merchandise in controversy and with the activities of his competitors; that the usual wholesale quantity of drawn gut was 1,000 strands, packed in 10 packages of 100 strands each; that Barcelona was a principal market in Spain for such merchandise; that the sale in question was made in the ordinary course of trade without restriction at the price at which such merchandise was offered to anyone else (although this statement is materially qualified by later testimony); and that the price for export to the United States or other countries or for home consumption was the same.

It further appears from the record that the transaction represented by the importation under consideration was the only sale the witness had ever made for export to the United States, and that he had never made any other offer for sale of such merchandise for export to the United States; that while he testified that he knew of other dealers in the Barcelona district who sold such merchandise for export to the United States, he was very indefinite and uncertain as to the price these other dealers were paying for such merchandise either for export to the United States or for home consumption.

Much has been said in oral argument and in the briefs filed by the parties relative to importer's third, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error concerning the admission in evidence of hearsay testimony, and whether it should be weighed, or disregarded.

Upon this point we believe that the trial judge correctly stated the rule that, subject to certain exceptions, hearsay testimony is inadmissible. But we find it unnecessary in this case to determine whether the trial judge, in arriving at his conclusion on the merits, actually weighed, or disregarded, such hearsay testimony, which was admitted without objection. It should be presumed that the trial judge in fact weighed all of the evidence in the case whether hearsay or otherwise, under the settled rule as enunciated in *Spiller* v. *Atchison, T. & S. F. Ry. Co.*, 253 U. S. 117, 130, and cases cited, that in a court of law—

 * * * if evidence of this kind is admitted without objection, it is to be considered, and accorded its natural probative effect, as if it were in law admissible.

See also *New England Fish Co.* v. *United States*, 15 Ct. Cust. Appls. 34, T. D. 42137; and *United States* v. *Toledo Museum of Art*, 25 C. C. P. A. (Customs) 373, T. D. 49455.

Viewed in its most favorable light, the exporter's testimony, which was relied upon by the importer to prove export value, was, in our opinion, too indefinite, uncertain, and vague to establish the essen-

tials of export value, as required by section 402 (d) of the Tariff Act of 1930. Hence it is of no consequence whether—

\* \* .\* the testimony of the exporter was sufficient to establish *prima facie* that the price at which merchandise such as that here in issue was, at the time of exportation of the instant merchandise, freely offered for sale to all purchasers in Barcelona, Spain, in usual wholesale quantities and in the ordinary course of trade, was the invoiced and entered value in each case, less packing; that Barcelona was a principal market of the country of exportation for such merchandise, and that such values were the foreign value, as defined in Section 402 (c), *supra*, as it read prior to the passage of the Customs Administrative act of 1938.

as alleged in the Government's second assignment of error herein.

We therefore find and hold that the importer failed to make out a *prima facie* case, and that the export value of the merchandise in controversy is that returned by the appraiser.

For the reasons stated, the judgment of the lower court is in all respects affirmed.

Judgment will be entered accordingly.