FLOREA & CO., INC. *v.* UNITED STATES

**No. 5908.**—Invoice dated Yokohama, Japan, May 2, 1936.
Entered at New York, N. Y., May 26, 1936.
Entry No. 845859.

(Decided July 19, 1943)

*William Whynman* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

COLE, Judge: This case is the third in the group of three (Reappraisements 123770–A, 123771–A, and 123772–A) brought by plaintiff involving shipments of wool knit gloves from Japan. The

records in the two previous cases were not offered here, but substantially the same line of proof was introduced in the instant case through witnesses who appeared in the two previous cases. I found in deciding Reappraisement 123771–A, filed simultaneously herewith, that the merchandise was undoubtedly similar. In support of plaintiff's motion for rehearing in the first case, Reappraisement 123770–A, which motion was denied, counsel stated in his brief:

> If the court in its discretion shall grant a rehearing, counsel for the plaintiff will stipulate or consent to the consolidation of the cases now suspended which involve part of the same merchandise and purchased simultaneously in order that the entire issue in the case may be fully determined and covered by *one decision*. This will avoid the necessity of repetitious trials on the suspended cases and save the time of the court and the office of the Assistant Attorney General. [Italics mine.]

I agree thoroughly with plaintiff's counsel in the foregoing statement that one decision, and one alone, should be sufficient to determine all the litigation presented in the three cases. Such multiplicity of trials involving similar merchandise and issues if resorted to very extensively will speed a change in the existing procedure permitting such a situation to develop. In the light of all of these circumstances, I order that this opinion be promulgated concurrently with that in Reappraisement 123771–A, hereinafter referred to as the other case.

The merchandise covered by the shipment in question is wool knit gloves, quality 7107, exported from Japan on May 2, 1936, and entered at the port of New York on May 26, 1936. It was entered at the invoice price, representing, as claimed by plaintiff, export value as defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402) of 6.10 yen per dozen ($1.76 U. S. currency). The appraiser found an export value of 5.90 yen ($1.70 U. S. currency) per dozen, thus rendering applicable the provisions of the Presidential proclamation (T. D. 48183) issued under authority of section 336 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1336) and declaring that duty on wool knit gloves from Japan, valued at not more than $1.75 per dozen, shall be based on American selling price as defined in section 402 (g) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (g)). Accordingly, the present merchandise was appraised on the basis of American selling price at $5.50 per dozen. Despite the 7 years intervening since the date of importation, this case has just recently been referred to me for decision.

Here, as in the other case, defendant moved to dismiss the appeal as invalid under that part of section 501 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1501) which provides that "No appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of the act relating to the entry and appraisement of such merchandise," claiming that plaintiff violated the provisions of sections 481, 482, 484, and 485 of the Tariff Act of 1930 (19

U. S. C. 1940 ed. § 1481, 1482, 1484, and 1485), which require all invoices covering imported merchandise to set forth essential facts, including the purchase price, necessary to a proper appraisement, examination, and classification. Consideration of the motion must take precedence over discussion of the proper dutiable value of the merchandise, because if the motion is good the appeal is null and void *ab initio* and therefore the court is without jurisdiction to find value. *United States* v. *Daniel F. Young, Inc. (Minobu Trading Corp.) et al.*, 27 C. C. P. A. 124, C. A. D. 73.

The motion is based on practically the same set of facts submitted in the other case. Summarized, they are: Melvin Poons, a partner in the Merchandise Trading Co., plaintiff's exporting representative in Japan, stated that this merchandise was not ordered pursuant to the contract existing between the two parties, and that he knew nothing of the transaction until the goods were delivered to his place of business by the Japanese manufacturer, Hirano Jacket Co., with a bill showing a price of 5.90 yen ($1.70 U. S. currency) per dozen, for exportation to the plaintiff. He testified that the purchase of these gloves was negotiated by Melvin Adler, treasurer of the plaintiff corporation, who instructed that the invoice be falsified to show a price of 6.10 yen ($1.76 U. S. currency) per dozen, in order to avoid paying duty under the Presidential proclamation. The witness further testified that he followed the instructions of the said Adler and in preparing the invoice showed the fictitious price of 6.10 yen ($1.76 U. S. currency). He explained that payment for the merchandise at the true purchase price of 5.90 yen ($1.70 U. S. currency) per dozen was adjusted by allowing credit in plaintiff's "running account" for the difference between the advanced value shown on the invoice and the actual cost, with due allowance for the exporter's 5 per centum commission. In the instant case, however, no corroborative proof was offered in the form of a credit note or financial statement, which was produced in the other case, but the customs agent's reports (collective exhibit 2) substantiate the oral testimony that the purchase was made by the treasurer of the plaintiff corporation, and, according to the manufacturer's books, at a price of 5.90 yen ($1.70 U. S. currency) per dozen.

Cross-examination of the witness developed that statements on the consular invoice to the effect that the shipment was made pursuant to an order of March 20, 1936, were not true, and also elicited statements which infer he falsified the price on the consular invoice to protect the financial position of his company. The effect of the admission, that a wrong price was inserted on the invoice, with knowledge of the plaintiff, to avoid payment of duty under the Presidential proclamation applicable to the instant merchandise, is not disturbed thereby.

Here, as in the other case, the treasurer of the plaintiff corporation denied, first, that he purchased the present merchandise, and, then, that he instructed his foreign exporter to falsify the invoice in question or any other invoice. The contract between the Merchandise Trading Corporation and Florea & Co., Inc., which was not before the court in the other case, was offered and admitted in evidence here as exhibit 4, and its terms show that the relationship between the two parties was not that of buyer and seller, but of principal and agent, and that the latter, for a valid consideration, agreed to purchase gloves subject to plaintiff's instructions, from Japanese manufacturers, examine and subject the merchandise to rigid inspection, pack it for transshipment, and prepare "such documents as are necessary for the expeditious clearing of the merchandise upon arrival in America, without unreasonable delay." The president of the plaintiff corporation also testified, as he did in the other case, denying that the invoice price was not the purchase price, and stating that he never received the credit alleged to have been granted by his exporting representative. The oral testimony of plaintiff's witnesses loses some of its probative force in the light of the contract (exhibit 4) which very clearly attributes to the importing corporation knowledge, coupled with appropriate responsibility, in connection with its transactions negotiated in Japan. The provisions of the contract compel the finding that the transaction in question was entered into between the plaintiff corporation and the Japanese manufacturer, with the exporting company acting as agent for the importer.

Another phase of this litigation which counsel for plaintiff has emphasized concerns information contained in the customs agent's report of May 22, 1936, included in collective exhibit 2, and the invoices covered by the three appeals, hereinabove referred to. The customs agent's report lists deliveries, taken from accounting records of the foreign manufacturer, to the exporting company, and although the total amount, 337 dozen pairs, agrees with the aggregate shown by the invoices, there is a difference in the total amount of each quality reported in the two sets of documents. Plaintiff urges that this discrepancy has the effect of repudiating not only the testimony of the witness Poons, but also the accuracy of the customs agent's report. The court, however, is not inclined to attach such importance thereto as would deny all evidentiary value to defendant's proof. On the contrary, the difference in quantities assumes minor significance from the observation that the evidence which plaintiff seeks to discredit is in complete reconciliation with respect to the all important factor of price. Both sources of information agree that the price paid for the gloves in question was 5.90 yen ($1.70 U. S. currency) per dozen.

For reasons set forth in the other case, which I do not regard necessary to be repeated here, I find that plaintiff failed to meet

the requirements of sections 481, 482, 484, and 485, *supra*, and therefore under authority of section 501, *supra*, dismiss the appeal as invalid. Judgment will be rendered accordingly.

What was said in the other case concerning the merits of plaintiff's case is equally applicable here. In the proof adduced, plaintiff has utterly failed to meet its burden of establishing all the elements included in the statutory definitions of dutiable values as set forth in section 402 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402).