## FLOREA & Co., INC. *v.* UNITED STATES

**No. 6190.**—Invoice dated Yokohama, Japan, May 2, 1936.
Certified May 2, 1936.
Entered at New York, N. Y., May 26, 1936.
Entry No. 845859.

### Second Division, Appellate Term

(Decided June 27, 1945)

*William Whynman* for the appellant.

*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges; TILSON, J., dissenting

LAWRENCE, Judge: The basic facts of this case are set forth in the opinion below (Reap. Dec. 5908) from which we quote:

The merchandise covered by the shipment in question is wool knit gloves, quality 7107, exported from Japan on May 2, 1936, and entered at the port of New York on May 26, 1936. It was entered at the invoice price, representing, as claimed by plaintiff, export value as defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402) of 6.10 yen per dozen ($1.76 U. S. currency). The appraiser found an export value of 5.90 yen ($1.70 U. S. currency) per dozen, thus rendering applicable the provisions of the Presidential proclamation (T. D. 48183) issued under authority of section 336 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1336) and declaring that duty on wool knit gloves from Japan, valued at not more than $1.75 per dozen, shall be based on American selling price as defined in section 402 (g) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (g)). Accordingly, the present merchandise was appraised on the basis of American selling price at $5.50 per dozen.

For reasons which will presently be stated, the trial court did not proceed to determine the value of the merchandise, but upon motion of the Government held that the appeal for reappraisement was invalid under the authority of section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501). This conclusion was based upon the finding that the importer had failed to comply with the requirements of sections 481, 482, 484, and 485 of the Tariff Act of 1930 (U. S. C. §§ 1481, 1482, 1484, and 1485). Judgment was accordingly entered which recites in part:

It is Hereby Ordered, Adjudged, and Decreed that the appeal be, and the same is hereby, dismissed.

This proceeding is an application for a review of that judgment.

Sections 481, 482, 484, and 485, *supra*, are very long, and embrace a large number of provisions which, it is alleged by the Government, must be complied with by the importer at the peril of his appeal being declared invalid by virtue of that part of section 501, *supra*, which reads:

No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all of the provisions of this Act relating to the entry and appraisement of such merchandise.

It should be noted that sections 481 and 482, *supra*, definitely relate to the *invoice* and its contents, whereas the provision in section 501, *supra*, by virtue of which it was held that the appeal for reappraisement was invalid, confines its application to compliance "with all the provisions of this Act relating to the *entry* and *appraisement* of such merchandise." [Italics supplied.]

In *Agruba Trading Co.* v. *United States*, 14 Cust. Ct. 338, Reap. Dec. 6104, decided February 26, 1945, this court held that the provisions of section 481, *supra*, were not within the orbit of the provisions of section 501, just quoted above. We there said in part:

Furthermore, we are clearly of the opinion that the provision above quoted from section 501 does not contemplate compliance by the consignee or his agent with the terms of section 481 as a condition precedent to the validity of an appeal for reappraisement. That provision expressly confines its application to compliance "with all the provisions of this Act relating to the *entry* and *appraisement*

of such merchandise." [Emphasis added.] Upon examination of other provisions of said act of 1930, it will be observed that section 481, *supra*, is entitled "Invoice—Contents"; section 482—"Certified Invoice," while section 484 bears the title "Entry of Merchandise" and section 485 relates to the "Declaration," and sets forth the requirements imposed upon every consignee in making entry under the provisions of section 484. Other sections of the act may also be noted which refer expressly to "entry." See sections 487, 490, and 498.

Section 500 refers to "Duties of Appraising Officers"; section 501 to "Notice of Appraisement—Reappraisement"; and section 502 to "Regulations for Appraisement and Classification."

With these facts in mind we conclude that the language of section 501 reading "unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise" does not relate to invoicing (sections 481 and 482, *supra*).

This view was expressed by the late Judge Brown in a concurring opinion in *United States* v. *Alatary Mica Co.*, Reap. Circ. 1824 (1930), from which we quote:

> Section 501 is a remedial statute which provides a necessary legal remedy and is not to be construed in a way which in many cases would destroy such necessary legal remedy. It does not mention invoicing, and invoicing and entering are two separate things.
> To bring invoicing in by construction would violate the fundamental ·rule of statutory construction, that in applying remedial statues, as Sutherland on Statutory Construction says (Sec. 430 Ed. of 1891):
>> Liberal construction is given to suppress the mischief and advance the remedy. For this purpose * * * it is a settled rule that everything may be done in virtue of the statute in advancement of the remedy that can be done consistently with any construction.

The reasons for excluding the terms of section 481 from the operation of section 501, would apply with equal force to exclude the provisions of section 482 from its operation, and we so hold.

With respect to compliance with sections 484 and 485, *supra*, relating to the entry of merchandise, we are of the opinion that there was substantial compliance with both of those sections, within the contemplation of the provision in section 501, *supra*, under the doctrine announced by us in *Dwyer & Wedemann* v. *United States*, 27. Treas. Dec. 261, T. D. 34809. That case was decided more than 30 years ago when the Tariff Act of 1913 was in force. It has been followed in principle in all cases where applicable under every succeeding tariff act.

The Government there urged that the invoice did not contain—

* * * a true and full statement of the time when, the place where, the person from whom the same (the merchandise involved) was purchased or agreed to be purchased, * * *.

as required by paragraph D of said act of 1913, a predecessor of section 481, *supra*.

In that case we pointed out that paragraph F of section 3, of said act of 1913, corresponding with sections 484 and 485 of the Tariff Act of 1930, provided:

> That whenever merchandise imported into the United States is entered by invoice, a declaration upon a form to be prescribed by the Secretary of the Treasury, according to the nature of the case, shall be filed with the collector of the port at the time of entry * * *.

Paragraph M of said section 3 granted to every importer the right of appeal to reappraisement whenever he deemed an appraisement too high, provided; "he shall have complied with the requirements of law with respect to the entry and appraisement of merchandise."

We quote from the opinion in that case:

In this case the importer filed an invoice, as required by paragraph F, and made his entry thereon, which the collector accepted. Subsequently the appraiser, to whom the papers were forwarded, appraised the merchandise, making the advance here complained of.

The court then significantly observed—

If the collector did not consider the invoice to be in conformity with paragraphs C and D of said section 3, tariff act of 1913, we think that he should have refused entry thereon and required the importers to give bond to produce a corrected invoice; but having failed so to do, and the invoice having been accepted as sufficient for purposes of entry and appraisement, we do not think the importer is thereafter to be denied his statutory right of appeal to reappraisement on the ground that he has failed to comply "with the requirements of law with respect. to the entry and appraisement of merchandise."

It may be noted that paragraphs C and D referred to in the preceding paragraph were similar in substance to sections 481 and 482 of the Tariff Act of 1930.

The opinion also points out that—

*It is impossible for us to conceive under what construction of the law it can be claimed that, after an importer has entered his goods and the same have been duly appraised by the appraiser, there is no course left open to the importer to take an appeal from said appraisement.* If this doctrine should be declared sound, then the appraiser might, with the same propriety that he advanced the merchandise in this case 5 per cent in value, arbitrarily advance the value of any merchandise to the point of seizure, without any recourse or right of appeal being available to importers. [Italics supplied.]

Paragraph D contains no provision penalizing a failure on the part of importers to comply literally with its terms. It certainly does not provide that an importer who fails to show on his invoice the details required should be denied the right of appeal from an appraisement of his merchandise.

The court then added:

Failure to fully set forth on the invoice and entry the data required by law does not necessarily call for a dismissal of these proceedings, *especially in view of the fact that both the collector and appraiser have duly and officially passed upon the merchandise covered thereby.* [Italics supplied.]

In the case before us the entrant duly filed the consular invoice and entry papers with the collector of customs, and, so far as this record shows, both the collector and the appraiser performed their respective official duties thereon without difficulty or embarrassment. If the invoice and entry papers were not in proper form, it would seem that both of those officers had statutory authority to require the production of further information under section 509 of the Tariff Act of 1930.

Section 484, *supra*, provides, so far as here pertinent, in substance,

that the consignee of imported merchandise shall file an entry with the collector of customs within a limited period of time; shall produce a certified invoice and bill of lading; and shall set forth such facts as the Secretary of the Treasury may prescribe.   This section it will be noted makes provision for filing a bond for the production of a certified invoice in those instances where a certified invoice is not produced at the time of entry.

We find that section 484 was complied with, in the absence of any evidence to the contrary.

The Government in its brief emphasizes the fact that section 485, *supra*, requires among other things, a *"declaration under oath,"* stating—

(2) That the *prices* set forth in the *invoice* are *true*, in the case of merchandise purchased or agreed to be purchased,   *   *   *.
(3) That *all other statements* in the invoice or other documents *filed with the entry*, or in the entry itself, are *true and correct;*   *   *   *.   [Italics quoted.]

If failure of the entrant to comply literally with the terms of sub-paragraph (3), *supra*, is sufficient ground for dismissing an appeal for reappraisement it would seem that virtually all appeals for reappraisement would be subject to dismissal. · As stated by our appellate court in *United States* v. *V. W. Davis, Sinai Kosher Sausage Factory*, 20 C. C. P. A. (Customs) 305, T. D. 46087:

If an incorrect statement of value in an entry bars an importer from an appeal to reappraisement as the Government seems to contend, then in every case where the appraiser advances the entered value the Customs Court would have no jurisdiction to entertain the appeal unless it found the entered value to be the proper appraised value.   In other words, under the Government's theory an importer could secure no relief if the court found upon reappraisement that the appraised value was less than that fixed by the local appraiser but more than the entered value, and in such case the court would be compelled to dismiss the appeal to reappraisement for want of jurisdiction upon the ground that the importer had not complied with the law requiring the entry to state the value of the merchandise imported.

However, the court pertinently added:

We do not think that jurisdiction of the court upon reappraisement is dependent upon a *correct* statement of the value of the merchandise imported, either in the *invoice* or the *entry;*   *   *   *.   [Last two emphases added.]

It seems clear therefore that a strict interpretation of the provision in section 501, *supra*, is not permissible, otherwise it would lead to a result which the Congress could not have intended.   It will be noted that section 501, *supra*, in terms provides that the consignee or his agent shall comply with all provisions of this act, not only as to the *entry*, but also as to the *appraisement* of his merchandise.   If applied narrowly, the terms of this provision would seem to impose upon the consignee a task impossible of accomplishment.   It is not clear

just how the consignee could comply with "all provisions of this Act" as to the "appraisement" of his merchandise.

Section 501, *supra*, is a remedial statute, and a strict construction is not favored. Note *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273, T. D. 41212, and authorities cited.

The Government contends that the importer practiced deception in invoicing and entering the merchandise covered by this appeal, and that consequently there was failure to comply with section 485. It would seem that if there were good and sufficient reasons to believe that the invoice and entry were falsified with the intention of depriving the United States of lawful duties, sections 591 and 592 impose punishment and penalties designed to meet such a situation. In view of the conclusion we have reached we are not here concerned with that phase of the case. Its treatment, if necessary, is reserved for another forum having appropriate jurisdiction of the subject.

As observed by the late Judge McClelland, speaking for the First Division, Appellate Term, in *United States* v. *Alpha Silk Throwing Co., Inc.*, 68 Treas. Dec. 1278, Reap. Dec. 3663, where, as in the instant case a motion was made by the Government to dismiss an appeal for reappraisement, for the alleged failure of the consignee or his agent to comply with the provisions of section 501, *supra:*

If underlying the objections here made there exists belief that the alleged irregularities were deliberate and made with fraudulent intent, counsel for the Government knows that this is not the court in which to try such an issue. We are only concerned with finding the dutiable value of the involved merchandise following appeal from what appears to have been an appraisement made regularly and within the contemplation of the statute.

It was therefore held in that case that the single judge had jurisdiction to try the appeal for reappraisement and to determine the value of the merchandise involved on the merits of the case, and his action in denying the motion of the Government to dismiss the appeal was affirmed.

In passing, reference may be made to cases illustrating circumstances under which an appeal for reappraisement may properly be dismissed pursuant to section 501, *supra*, or its antecedent provisions. In *Levi Sondheimer & Co.* v. *United States*, 32 Treas. Dec. 316, T. D. 37077, decided March 21, 1917, it appears that the appeal then before the court related to a so-called "*Informal Entry of Packed Package Inclosures Not Exceeding $100 In Value*," which it was contended by the Government did not constitute "a lawful entry" within the meaning of paragraph M of section 3 of the Tariff Act of 1913. In the course of its opinion, the court there pointed out:

As long ago as 1867 the courts held that no reappraisement on appeal can take place unless there is a previous entry followed by an appraisement (28 Cases of

Wine, 24 Fed. Cas. 415), and that decision has been since followed by the Board of General Appraisers. Lloyd Bros.' case, G. A. 6468 (T. D. 27680); Wyman's case, G. A. 6536 (T. D. 27887); Downing's case, G. A. 6732 (T. D. 28814).

In *Oriental Trading Art & Looms Co. (Inc.) v. United States*, 59 Treas. Dec. 650, T. D. 44725, decided March 16, 1931, it appears that the value of certain Chinese embroideries was stated in an informal paper by an employee of the post office department, and duty was paid thereon by the importer. An appeal from such valuation was dismissed by the court upon the ground that the importer had not complied with the provisions of section 501 of the Tariff Act of 1922, in making formal entry of the merchandise.

Note also: *Krower, Tynberg Co. (Inc.) v. United States*, 34 Treas. Dec. 136, T. D. 37533; Reap. Circ. 33244; *Arthur J. Fritz & Co. (C. S. Anderson) v. United States*, 1 Cust. Ct. 569, Reap. Dec. 4364; *Captain A. D. Hansen v. United States*, 1 Cust. Ct. 752, Reap. Dec. 4459, affirmed in 2 Cust. Ct. 976, Reap. Dec. 4584.

Following the reasoning of the *Dwyer & Wedemann* case, *supra*, which was approved, adopted, and applied by this court in the *Agruba* case, *supra*, as well as in *United States v. Alpha Silk Throwing Co., Inc., supra;* Reap. Circ. 33762, and in other cases decided by this court, we are constrained to hold that the court below erred in dismissing the appeal for reappraisement upon a finding that sections 481, 482, 484, and 485 had been violated. We find and hold that the provision in section 501, *supra*, was complied with.

However, while we are of the opinion that the appeal should not be dismissed for the alleged failure to comply with section 501, *supra*, we are nevertheless satisfied that it should be dismissed for other reasons, (cf. *United States v. Alatary Mica Co.*, 19 C. C. P. A. (Customs) 30, T. D. 44871).

It is elementary that appeals are taken from the judgment, and not from the opinion, of the lower court. *Roessler & Hasslacher Chemical Co. v. United States*, 13 Ct. Cust. Appls. 451, T. D. 41347; *United States v. International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436; *United States v. Penn. Commercial Corporation of America*, 15 Ct. Cust. Appls. 206, T. D. 42237; *Roberts v. United States*, 17 C. C. P. A. (Customs) 215, T. D. 43653; *United States v. Tausig & Pilcer, Chas. Redden*, 18 C. C. P. A. (Customs) 421, T. D. 44681; and *Winter Bros. v. United States*, 19 C. C. P. A. (Customs) 113, T. D. 45245.

In the *Winter Bros.* case, *supra*, the rule was clearly stated by the appellate court in the following language:

It is well-settled law that if the court below came to a correct conclusion and rendered a *correct judgment*, its judgment will not be reversed because of the *method of reasoning* which may have induced such judgment. It is the *judgment* of the court which is appealed from, and not its *decision* or *opinion*. [Italics supplied.]

The case of *United States* v. *Penn. Commercial Corporation of America, supra,* established that the foregoing rule applied to reappraisement proceedings before this court. In that case, the decision of the Customs Court indicated that the reappraisement appeal should be dismissed, whereas the judgment rendered pursuant thereto passed upon the merits of the case. The appellate court held that, the judgment must prevail, and reviewed the proceedings on that principle.

While we are satisfied for reasons set forth above that there was substantial compliance by the consignee or his agent, with the provisions of the act of 1930 "relating to the entry and appraisement" of the merchandise involved in this proceeding, and that it was error to dismiss the appeal for the reasons assigned by the court below, we are of the opinion that the judgment appealed from should be affirmed by reason of the failure of the importer to make a *prima facie* case.

From an examination of the record herein, it appears that appellant first introduced the testimony of the examiner of the merchandise in the appraiser's office, to establish that all elements essential to a proper appraisement were here present, and that the only dispute between the Government and the importer at that time, was in respect to the actual amount of export value, the appraiser finding it to be yen 5.90, and the importer contending it should be yen 6.10 per dozen.

Appellant next called as a witness Melvin Adler, treasurer of the importing company, who testified concerning the negotiations conducted by him in procuring the merchandise in Japan. His testimony may be summarized as follows: He had been buying gloves in Japan for a number of years for Florea & Co., appellant herein. He arranged for the purchase of an all-wool jacquard glove identified as No. 7107 here in controversy. In doing so, he investigated the market by consulting other "exporters" showing them a sample glove and getting from them quotations "as to what they could manufacture the same glove for"; that he "found out it was anywhere from 6.40 to 7 yen," and that he eventually completed the transaction with the Merchandise Trading Co.

Q. You bought from the Merchandise Trading Co?—A. That is correct.
Q. At what price?—A. 6 yen, 10.

On cross-examination the attention of the witness was drawn to the statement on the consular invoice indicating that the contract date for these gloves is given as March 19, 1936, and the witness admitted that it was during March of that year that he placed the order for the gloves. He also admitted that in March and April of 1936 he had a contract with the Merchandise Trading Co. in Japan, and through that company he was buying merchandise on a

commission basis. His further testimony on cross-examination reads as follows:

X Q. These two exporters, when they quoted you prices, did they quote you the manufacturers' price, the two that gave you quotations?—A. I assume they quoted the list price, whether it was the manufacturers' price, I do not know.

\* \* \* \* \* \* \*

X Q. What commission did they ask for?—A. 5 per cent.

X Q. Over and above the price they quoted you?—A. That is correct. In other words the commission was in addition.

X Q. Commission was for their fee for obtaining the merchandise for you?— A. Their commission was for their inspection or whatever else they may consider it.

X Q. The commission was the amount that went to the exporter, is that correct?—A. That is correct.

It will be observed that, while Adler first testified that he bought the gloves *from* the Merchandise Trading Co., he subsequently testified that he bought *"through"* that company. The consular invoice discloses that the Hirano Jacket Co. were the sellers, and that the Merchandise Trading Co., by Melvin Poons, were the shippers.

There is no proof whatsoever that any of the "exporters" referred to by Adler actually manufactured any similar gloves or made any actual sales thereof, or quoted any specific price therefor other than "anywhere from 6.40 to 7 yen."

Adler explained that by the term "exporter" he had reference to people in Japan "who purchased merchandise for clients who came from abroad, and sold it to them at what they considered the best possible price."

We are clearly of the opinion that the testimony on behalf of importer-appellant fell far short of establishing any statutory value for the merchandise. There is no evidence of sales or offers for sale of such or similar gloves to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, etc., as required by the statute. Certainly, there is no evidence of such sale or offer for sale within the stated range of from 6.40 to 7 yen per dozen alleged by Adler to have been quoted to him by the two "exporters" whom he consulted. Clearly, there is no evidence of an export value, as defined in section 402 (d), *supra*, other than that found by the appraiser, and we so find.

Upon reviewing the evidence, we hold that the importer failed to make a *prima facie* case, and that the motion of the Government to dismiss the appeal on that ground should have been granted.

For the reasons set forth in this opinion, we affirm the judgment of the court below dismissing the appeal for reappraisement, which results in leaving the appraised value in full force and effect. Judgment will be entered accordingly.

TILSON, Judge: The following opinion was prepared by me as the majority opinion, but since my associates disagree with the conclusions reached, the same, with only minor and necessary changes, is filed as my dissent.

This is an application for review of a decision of the trial court (Reap. Dec. 5908) wherein the court stated:

For reasons set forth in the other case, which I do not regard necessary to be repeated here, I find that plaintiff failed to meet the requirements of sections 481, 482, 484, and 485, *supra*, and therefore under authority of section 501, *supra*, dismiss the appeal as invalid. Judgment will be rendered accordingly.

During the course of its decision the trial court also made the following statement:

\* \* \* Consideration of the motion must take precedence over discussion of the proper dutiable value of the merchandise, because if the motion is good the appeal is null and void *ab initio* and therefore the court is without jurisdiction to find value.

I am in complete agreement with the statement of the trial court that if the motion is good the appeal is null and void *ab initio* and therefore the court is without jurisdiction to find value.

At this point it should be stated that the "other case" referred to by the trial court is Reappraisement No. 123771–A, the decision in which was promulgated at the same time the decision here on review was promulgated (Reap. Dec. 5907). It should be further stated that the record upon which the instant case was submitted is entirely separate and distinct from the record upon which Reappraisement No. 123771–A was submitted, and no part of the record in Reappraisement No. 123771–A was offered or admitted in evidence in the instant case. Our review of the decision before us should be made without any reference to, or consideration of, the record in Reappraisement No. 123771–A.

The trial court after finding that it had no jurisdiction to pass upon the merits of the case, and after having dismissed the appeal, proceeded to find and hold that—

What was said in the other case concerning the merits of plaintiff's case is equally applicable here. In the proof adduced, plaintiff has utterly failed to meet its burden of establishing all the elements included in the statutory definitions of dutiable values as set forth in section 402 of the Tariff Act of 1930 \* \* \*.

Once a court has determined that it has no jurisdiction of a case it is improper for it to make any findings or enter any orders concerning the merits of the case. This is clearly shown by the following quotation from the Supreme Court of the United States in *New Orleans & Bayou Sara Mail Co.* v. *Anthony Fernandez et al.,* 12 Wall. 130; 20 L. Ed. 249:

Where the circuit court is without jurisdiction it is in general irregular to make any order in the cause except to dismiss the suit; but that rule does not apply to

the action of the court in setting aside such orders as had been improperly made before the want of jurisdiction was discovered.

Since the finding and holding of the trial court, above set out, after it determined that it had no jurisdiction, was not the setting aside of such orders as had been improperly made before the want of jurisdiction was discovered, its action in that regard was clearly erroneous.

During the trial of this case counsel for appellee made the following motion:

The Government now moves to dismiss the appeal on the basis of the testimony by the Government witnesses. The Government moves to dismiss the appeal under section 501 of the Tariff Act of 1930, the provision reading:

No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise.

This act under sections of the Tariff Act of 1930, sections 481, 482, and 485 contain the requirements upon the entry of merchandise.

\* \* \* \* \* \* \*

The Government contends that the evidence produced in this case establishes that the invoices filed with the entry of this importer, does not correctly state the purchase price of this merchandise, and citing the case of United States vs. Vandegrift et al., 26 Court of Customs and Patent Appeals, page 360, C. A. D. 42, the Government moves to dismiss the appeal.

It will be seen that counsel for appellee apparently based the motion to dismiss upon the contention that sections 481, 482, and 485 had not been complied with, without any reliance being placed upon section 484, and yet in its brief filed herein, in quoting the statutes upon which it relied, section 482 is omitted and subsection (d) of section 484 is quoted. However, this is not considered fatal, since it is my view that the motion would have been valid under section 501 alone, without any particular reference to any of the other sections.

The term "entry," as used in the Tariff Act of 1930, is susceptible of two meanings. It may refer to the paper or declaration which the importer in the first instance hands to the entry clerk, and in other instances it may denote, not a document, but a transaction, a series of acts which are necessary to the end to be accomplished, such as the entering of the merchandise. As used in the involved portion of section 501, it must be understood to include the series of acts done by the importer at the customhouse necessary to the introduction of his merchandise into the United States according to law.

One of the requirements of section 481 is that the purchase price of each item of merchandise shall be set forth upon the invoice. Concerning this, Mr. Florea testified:

Q. Did you pay for the gloves at the rate of 6.10 yen per dozen?—A. We did.
Q. Never got a credit of any kind?—A. No.

The invoice before us shows that the merchandise was invoiced at 6.10 yen per dozen.  The gloves were purchased from the Hirano Jacket Co., of which firm Mr. Nobata was the manager.  There is in evidence a special agent's report in which it is stated that:

Mr. Nobata showed his firm's records of deliveries on the gloves in question as follows:

\*          \*          \*          \*          \*          \*          \*

Style 7107 100 Dozen April 10, 1936 at ¥5.90.

There is nothing in the report to show that the price of ¥5.90 was intended to reflect the purchase price, although it might be assumed that such was its purpose.  However, it is observed that the information supplied in the special agent's report herein was obtained in connection with invoice No. 3764, certified April 9, 1936, whereas the invoice in this case is No. 4865, certified May 2, 1936.  While there is evidence before us to the effect that the merchandise covered by both of said invoices is similar or even identical, there is no evidence that the market conditions and the purchase price in each instance were the same.  There is nothing before us to overcome the testimony that the importer paid for these gloves at the rate of 6.10 yen per dozen and that he never got a credit of any kind.

This would appear to answer the objections of counsel for appellee regarding the validity of this appeal when tested by the provisions of section 481, with the possible exception of subsection 10 thereof, regarding any other facts deemed necessary to a proper appraisement of the merchandise.  With reference to this latter requirement, it would appear that when the importer has furnished the collector a certified invoice reciting the actual purchase price of the merchandise, and knowing that he had received no rebates in connection with the transaction, he had complied with the provisions of said subsection 10.

An examination of section 482 in connection with the record before us clearly shows that each provision therein contained has been complied with in this case, and this is perhaps the reason counsel for appellee did not refer to and quote this section in its brief filed herein.  Suffice it to say that counsel for appellee in its brief filed herein has failed to call our attention to any specific noncompliance by the importer with section 482.

Turning now to section 484, entitled "ENTRY OF MERCHANDISE," we find that it provides that entry of merchandise shall be made at the customhouse by the importer or his agent within a specified time.  There is no complaint before us that the importer in this case failed to comply with these requirements.  There is a properly certified invoice in the papers now before us which was transmitted to this court by the collector, so there could be no complaint on that score.  This section also provides for the production of a bill of lading under

certain conditions. There is no complaint before us that the importer failed to comply with this provision.

Referring to the signing and contents of the entry, subsection (d) of section 484 provides that:

Such entry shall be signed by the consignee, or his agent, and shall set forth such facts in regard to the importation as the Secretary of the Treasury may require for the purpose of assessing duties and to secure a proper examination, inspection, appraisement, and liquidation, and shall be accompanied by such invoices, bills of lading, certificates, and documents as are required by law and regulations promulgated thereunder.

The entry before us shows that it was signed by "Florea & Co., Inc., Per B. Hyams, Atty.," so there can be no failure in this regard on the part of the importer. We are not advised as to what facts in regard to the importation the Secretary of the Treasury had required the importer to disclose. However, we do not need to speculate upon this point, as counsel for appellee has stated its contention in this regard as follows:

With the knowledge and consent of at least one of its officers, Mr. Adler, the treasurer, a consular invoice intentionally misrepresenting the purchase price of these gloves, and failing to disclose a rebate to the importer of part of the price shown on the invoice, was prepared for customs purposes in order to avoid a proper appraisement under the terms of the President's Proclamation. Since the importing firm is a corporation, and as such is held responsible for the acts of its officers—including the Treasurer—this was a conscious violation by the importer of subparagraphs (5), (9), and (10) of section 481 of the Tariff Act, supra, requiring all invoices for imported goods to set forth the "purchase price", all "rebates", and "any other facts deemed necessary to a proper appraisement", respectively.

The aforesaid deception appearing on the consular invoice was repeated on the customs entry, where, in addition, it will be noted the importer carefully inserted the unusual statement that the gloves are "over $1.75 per doz. pair." That positive statement on the entry indicates that the importer then had knowledge of the terms of the President's aforesaid Proclamation, and that its representatives at New York were continuing the effort to avoid a proper appraisement thereunder. This action was in direct violation of the provisions of subparagraph (d) of Section 484 of the Tariff Act, supra, requiring customs entries to "set forth such facts" as are necessary "for the proper appraisement of duties" and "to secure a proper appraisement and liquidation"; also that they be accompanied by "such invoices as are required by law."

The above contention is based upon the premise that the invoice was false, in that it stated the purchase price of the gloves to be ¥6.10, instead of ¥5.90. An examination of the decision of the trial court reveals that at no time did it make any specific or definite finding that the purchase price of the gloves was ¥5.90, instead of ¥6.10. It is true that the trial court, referring to witness Poons and the special agent's report, stated:

*  *  *  Both sources of information agree that the price paid for the gloves in question was 5.90 yen ($1.70 U. S. currency) per dozen.

But such a statement falls far short of a definite finding that the purchase price was ¥5.90, instead of ¥6.10, because there is evidence in the record exactly contrary to that furnished by witness Poons and the special agent. Witness Florea testified that he paid for the gloves in question at the rate of ¥6.10 per dozen and that he never received a credit or rebate of any kind. Since witness Florea was the man who purchased and paid for the gloves, he was certainly in a position to know the purchase price and also whether or not he ever received a credit or rebate. Both the president, George Florea, and the treasurer, Melvin Adler, of appellant corporation denied the statements of appellee's witness Poons relating to the purchase, invoicing, and ultimate payment of the gloves in question.

Since the statements contained in the special agent's report are in substantial agreement with the testimony of witness Poons it is apparent that the testimony of witnesses Florea and Adler must be considered as a denial and contradiction of the statements contained in the special agent's report.

In connection with the special agent's report, it should be stated that the record before us contains no special agent's report as to the purchase price of the merchandise covered by the invoice in this case, and that, as heretofore stated, while there is some evidence to the effect that the gloves covered by the invoice in this case and the gloves covered by the invoice concerning which the report was made, are similar, there is no evidence that the market conditions and the purchase price in both cases were the same.

Regarding this transaction witness Poons testified in effect that the invoice does not correctly state the purchase price of the merchandise; that he falsified the invoice; that it was made out and signed by him; that at the time he signed and swore to it he knew it was false; that he knew an invoice had to be a proper reflection of the transaction; that whether or not he would falsify an invoice was "not exactly" dependent upon the reaction to him; and that at that time his firm stood to be in serious trouble if Florea chose to make it. "So you falsified it to save your own neck, is that it?—A. I would not put it that way." * * * "We could have been in trouble, and I did not want to jeopardize our position or make things worse by antagonizing them at that time."

Witness Poons explained that he falsified the invoice at the request of Mr. Melvin Adler in order to avoid paying duty under the Presidential proclamation. On cross-examination he also testified as follows:

X Q. So when you said on that consular invoice, that the order was placed by you with them on that date, and there was no order ever placed, that invoice is false in another particular, is it not?—A. Yes.

The witness, however, failed to state that Mr. Adler requested him to falsify the invoice by stating thereon that the order for the gloves

was placed by him when as a matter of fact he did not place the order. Under the circumstances it must be assumed that witness Poons falsified the invoice in the latter instance of his own volition and not at the request of Mr. Adler. This latter instance, of course, is only a minor detail, but it goes to emphasize the attitude of the witness when it came to falsifying invoices.

In my opinion, the testimony of a witness who admits that he falsified an invoice, when he knew that it had to be a proper reflection of the transaction, is not entitled to much consideration or weight, and the explanation of the witness in this case as to why he falsified the invoice does not materially enhance his credibility.

The weight of the evidence before us establishes that the appellant herein purchased the involved gloves at the price of ¥6.10 per dozen, and the official papers show that they were so invoiced and entered. There was, therefore, no invoice or entry intentionally misrepresenting the purchase price of these gloves, and consequently no violation of subparagraph (d) of section 484 of the Tariff Act of 1930, requiring customs entries to "set forth such facts" as are necessary for a proper appraisement of duties and "to secure a proper  *  *  *  appraisement, and liquidation"; and that such entries be accompanied by "such invoices,  *  *  *  as are required by law."

Coming now to section 485, so far as here pertinent, the same reads as follows:

*  *  *  Every consignee making an entry under the provisions of section 484 of this Act shall make and file therewith, in a form to be prescribed by the Secretary of the Treasury, a declaration under oath, stating—

(1) Whether the merchandise is imported in pursuance of a purchase or an agreement to purchase, or whether it is imported otherwise than in pursuance of a purchase or agreement to purchase;

(2) That the prices set forth in the invoice are true, in the case of merchandise purchased or agreed to be purchased;  *  *  *  .

(3) That all other statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct; and

(4) That he will produce at once to the collector any invoice, paper, letter, document, or information received showing that any such prices or statements are not true or correct.

Counsel for appellee makes no contention regarding No. 1 above, and I shall therefore assume that the provisions therein contained were complied with. As to No. 2 above, I have already found that the prices set forth in the invoice are the prices actually paid by the purchaser. This being true, there would, therefore, appear to be no violation of the provisions therein contained. An examination of the record fails to disclose any "other statements in the invoice or other documents filed with the entry, or in the entry itself," which are not true and correct. I am, therefore, unable to hold that there has been any violation of the provisions of No. 3 above.

As to No. 4 above, an examination of the record fails to show that any invoice, paper, letter, document, or other information was received by the importer herein showing that any such prices or statement are not true and correct. This being true it is apparent there could have been no violation of No. 4 above.

Confirmation of the above views is to be found in *United States* v. *Vandegrift*, 26 C. C. P. A. 360, from which I quote as follows:

* * * It appearing from the record, however, that the license fees were paid in consideration of the exclusive right to purchase the involved and like machines for export to the United States and the exclusive right to manufacture and sell machines like those here involved both in the United States and Canada, and that neither Mr. Dichter nor the Ambeg Co. was to receive royalties on the products produced by such machines, we conclude that there is substantial evidence of record to establish *that the purchase price of the involved machines was $1,800 each, and that, as they were so invoiced and entered, the importers' appeals for reappraisement were valid.* [Italics ours.]

In *United States* v. *Railway Express Agency*, 28 C. C. P. A. 314, our appellate court, in commenting upon the *Vandegrift* case, *supra*, said:

* * * When the case reached this court it was contended by the Government that the $1,200 item should have been included in the addition for profit required to be made in computing the cost of production. We found that there was some substantial evidence to support the finding below to the effect that the $1,200 items were not profit items which were required to be included in determining the dutiable value.

The particular analogy between that case and the instant case is that there the Government attacked the sufficiency of the invoices and entries because the $1,200 items were not referred to in either, and there, as here, invoked the provisions of section 501, *supra*, insisting that the appeals for reappraisement should be dismissed. Since the items were held not to be a part of the purchase price of the merchandise, we held, in effect, that the failure to refer to them on the invoices and entries was not fatal, and that the appeals for reappraisement were valid.

The principle there announced we regard as applicable here.

I have carefully examined and considered all the evidence presented in support of the contentions made by both parties, and while I find it, in some particulars, to be conflicting, I find no reason to believe and give weight and consideration to the evidence offered by one side, and to disbelieve and give no weight or consideration to the evidence offered by the other side. There is nothing novel about a case wherein the testimony upon which it has been submitted is conflicting. In fact this appears to be the rule rather than the exception. In such a case it is the duty of the court, if possible, to reconcile such conflicting evidence, and, if this is found impossible, then to determine what the weight of such testimony establishes.

Therefore, after having carefully considered all of the evidence in this case, I find that the weight of such evidence shows that the appel-

lant complied with all the provisions of this act relating to the entry and appraisement of the merchandise in this case. I, therefore, hold the appeal to be valid.

This leaves for our consideration and determination the question of the proper dutiable value of the merchandise. In an effort to establish a value for the merchandise counsel for appellant offered the testimony of William J. Pickett and Melvin Adler. Witness Pickett testified in effect that in making his appraisement he found that the purchase of the merchandise was in the ordinary course of trade, without any restrictions, and that the price did not vary according to the quantity purchased; that the merchandise was entered at ¥6.10 per dozen; and that he found a value of ¥5.90 per dozen.

Q. Now what differences arose or what questions were in dispute between you and the importer, as far as this entry is concerned, and your finding?

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

The WITNESS: There was a dispute in this respect, I found out that the export value was 5.90, against the invoice value of 6.10.

Q. Was there any other element or question involved than 5.90, as against 6.10 per dozen, unit?—A. If I understand your question right, no.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

X Q. And your appraisement was on the basis of export value, is that right?—A. American selling price.

X Q. Based upon what?—A. Finding an export value of 5 yen 90 per dozen, net packed.

X Q. In finding that value of 5.90 yen per dozen packed, did you take into consideration all the statutory elements of export value?—A. Yes.

With reference to the value of the merchandise witness Adler gave the following testimony:

Q. In arranging the purchase, did you determine or do anything or investigate the market of that glove?—A. I did.

Q. Tell us what you did?—A. Well I investigated the market by consulting with other exporters.

Q. Go ahead.—A. Showing them the sample and getting quotations as to what they could manufacture the same glove for.

Q. And you found out?—A. Found out it was anywhere from 6.40 to 7 yen.

Q. And eventually arranged the sale with?—A. The Merchandise Trading Company.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

Q. At what price?—A. 6 yen 10.

Q. And did you buy it in the ordinary course of trade?—A. I did.

Q. Was there any restrictions on it?—A. None.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

Q. There were no restrictions placed on you, were there?—A. So far as what?

Q. As far as you could sell, you could do as you liked?—A. That is right.

Q. Did you know if anybody else could buy at the same price the same glove?—A. Everybody would be able to buy the same glove if they could pay for it.

Q. It was just an ordinary every day transaction, anybody could buy at all?—A. That is correct.

Q. And that was in the usual wholesale quantities?—A. That is correct.

\* \* \* \* \* \* \*

X Q. Now you stated you had quotations, some quotations from other exporters. What other exporters did you obtain quotations from?—A. One in particular was the Oriental Purchasing Company in Yokohama.

X Q. In Yokohama, and who else?—A. Nomura & Company.

\* \* \* \* \* \* \*

X Q. Who else?—A. There may have been one or two other Japanese concerns, the names of whom I cannot remember.

\* \* \* \* \* \* \*

X Q. Now when did you get these quotations from those two exporters that you remember?—A. At the same time, during this transaction.

\* \* \* \* \* \* \*

X Q. Which one quoted you? What price did you say they quoted you?—A. Anywhere from 6.40 to 7 yen.

X Q. Per dozen?—A. Correct.

\* \* \* \* \* \* \*

R. Q. Why did you go to visit these other places?—A. Well being a buyer, and rather conservative, naturally where I wanted to be certain, I wanted to——

R. Q. So you were checking on their contract, and checking the market too?—A. That is right, which is the customary thing for a buyer to do.

Counsel for appellee in its brief filed herein concedes that "No questions relating to foreign value are involved." This concession must be accepted as an admission that the export value is the proper basis upon which to appraise the merchandise. The evidence, above set out, as to the value of the merchandise establishes *prima facie* that the invoiced and entered values are the proper dutiable values. Nor do I find in the record in this case sufficient evidence to overcome the *prima facie* case established by the appellant.

The trial court in its opinion stated:

\* \* \* I find that plaintiff failed to meet the requirements of sections 481, 482, 484, and 485, *supra*, and therefore under authority of section 501, *supra*, dismiss the appeal as invalid. Judgment will be rendered accordingly.

After having found that if the motion to dismiss was good, the court was without jurisdiction to find value, and also after having found that the motion was good and having dismissed the appeal, it nevertheless proceeded as follows:

What was said in the other case concerning the merits of plaintiff's case is equally applicable here. In the proof adduced, plaintiff has utterly failed to meet its burden of establishing all the elements included in the statutory definitions of dutiable values as set forth in section 402 of the Tariff Act of 1930.

This last statement of the trial court is clearly in error and must be treated as a mere nullity, because only in cases where the court has jurisdiction do its acts and statements have force and effect.

After a careful consideration of the entire record in *this* case, and for the reasons hereinbefore stated, I find that the trial court erred in

dismissing the appeal as invalid, and in not finding and holding that the invoiced and entered values were the proper dutiable export values of the gloves in question.